INTERNATIONAL PAPER COMPANY,
Appellant/Respondent,

v.

Gregory FUTHEY, et al., and Steven Sinkler & Marsha Sinkler,
Respondents/Appellants.

Nos. 55869, 55926.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 27, 1990.

Rehearing Denied April 25, 1990.

Donald E. Heck, Clayton, for appellant/respondent.

James E. Carmichael, St. Charles, for respondents/appellants.

CARL R. GAERTNER, Judge.

Defendants, Marsha and Steven Sinkler, appeal from a jury verdict and judgment of $24,500 for plaintiff, International Paper, on its claim in quantum meruit. International appeals the denial of prejudgment interest. We reverse the judgment of $24,500 and dismiss the appeal of International as moot.

On July 26, 1985, the Sinklers entered into a contract for the construction of their house for $74,454 with defendant, Gregory Futhey. The Sinklers borrowed $75,000 to finance the construction from Community Federal Saving and Loan. As a condition to the mortgage, Community Federal required the Sinklers to enter into a disbursing agreement with Construction Escrow Services. The funds in escrow would be paid to, or on behalf of, the general contractor, Futhey, during construction through a voucher system, and thus safeguard the Lender's interest.

By late August, 1985, after the parties signed the respective agreements, Futhey began construction of the Sinklers' house. Futhey hired the services of several subcontractors and purchased materials from several suppliers. Futhey purchased lumber products from plaintiff, International, with whom Futhey maintained an open account. International sold the materials to Futhey for the Sinklers' house and delivered the items to the construction site, and added these charges to the unpaid balance of $2,401.37 on Futhey's open account. International, when keeping its records, failed to distinguish between the balance of Futhey's open account and the charges incurred solely from the construction of the Sinklers' home.

International furnished building materials to Futhey for the Sinklers' house from September 11, 1985 until December 20, 1985. While International did receive partial payment from Construction Escrow Services during that time, International applied those funds first to the $2,401.37 of Futhey's prior balance and then to the charges incurred during the construction of the Sinklers' house.

On December 20, 1985, Futhey defaulted on his open account with International and abandoned construction of the Sinklers' house. At the time of the default with International, Futhey had accumulated on account, a balance of $27,094.28—of which $24,627.18 was attributable to the Sinklers' construction. At the time of the breach with the Sinklers', approximately $62,000 of the $75,000 in escrow had been paid according to the terms of the disbursing agreement. Yet, the Sinklers' home was incomplete and uninhabitable.

Because of Futhey's abandonment, the Sinklers' were forced to complete the construction of their house at their own ex-

pense. International, also realizing that Futhey would not complete his obligations, approached the Sinklers and requested payment for the balance of Futhey's open account. When the Sinklers refused, International filed a mechanics lien on March 6, 1986, against the Sinklers' property in the amount of $27,094.28. Upon learning that International filed a mechanics lien, Construction Escrow Services required the Sinklers to add $15,000 to the approximately $12,500 in the construction disbursing account to satisfy International's lien. Upon deposit of the additional funds, Construction Escrow Services executed a final affidavit to Community Federal stating that all bills were either paid, or provided for, thus allowing the Sinklers to close on their house. Prior to trial, the balance in the Sinklers' escrow account reached $31,446.81, which included the Sinklers' deposits plus interest earned since 1986.

On March 27, 1987, International filed an amended petition against the Sinklers and Futhey in three counts alleging in Count I, a Suit to Enforce a Mechanics Lien against the Sinklers' property in the amount of $27,094.28; in Count II, a Suit on Account against Gregory Futhey in the amount of $27,094.28; and in Count III, a Suit in Quantum Meruit against the Sinklers "in the sum of $27,094.28, plus interest as allowed under law from December 20, 1985, for the materials furnished...."

The trial court, upon the appropriate motions of the parties, directed a verdict on Count I against International on its Suit to Enforce a Mechanics Lien. The trial court directed its verdict because International improperly included Futhey's prior balance of $2,401.37 in the mechanics lien against the Sinklers. Therefore, the lien was not a just and true account of the demand due and failed to meet the requirements of § 429.080 RSMo.1986. International has not appealed from this judgment. On Count II, the trial court directed a verdict for International on its Suit on Account against Futhey for the requested $27,094.28. On Count III, the trial court denied the Sinklers' motions for a directed verdict and submitted the count in quantum meruit to the jury. The jury returned a verdict in favor of International and against the Sinklers for $24,500, but denied prejudgment interest. This appeal and cross appeal followed.

■ In their first point on appeal, the Sinklers contend the trial court erred in denying their motions for a directed verdict because the exclusive remedy for an unpaid subcontractor, not in privity with the landowner, is under the mechanics lien statute, Chapter 429 RSMo.1986. They argue that since International failed to perfect its mechanics lien against the property, no other form of recovery against the owner is available and International's only recourse is against the general contractor. In support of this contention the Sinklers cite *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261 (Mo.App.1984). This case does not support their contention.

The facts giving rise to the litigation in *Green Quarries* and those in the instant case are strikingly similar. Green Quarries supplied materials to a general contractor for use in a construction project on the defendant's property. The contractor was adjudged bankrupt without paying Green Quarries which sought to impose a mechanics lien upon the defendant's property. For reasons not disclosed in the opinion, the trial court dismissed the mechanics lien petition but granted leave to file an amended petition seeking recovery against the landowner on the theory of unjust enrichment. Green Quarries appealed the dismissal of this amended petition for failure to state a claim upon which relief could be granted. By a four to three decision, our colleagues in the Western District affirmed the dismissal of the petition. Three judges based their affirmance upon two grounds; 1) the failure of plaintiff to allege non-payment by the owners to the general contractor and, 2) a refusal to allow a subcontractor to recover against the land owner on a quasi-contractual or quantum meruit theory where he could have availed himself of the statutory mechanics lien but did not do so. The Honorable Donald B. Clark cast the deciding vote in favor of affirming the dismissal but only on the first of the two grounds. Judge Clark sharply disagreed

with the concept of denying recovery to a subcontractor simply because of his failure to perfect an available mechanics lien and noted a decision on this point was unnecessary to the disposition of the case. The three dissenting judges expressly rejected the concept that the mechanics lien statute provides the exclusive remedy for a subcontractor against the landowner. In addition, the dissenting judges, although recognizing the necessity for the subcontractor to prove the owner had not paid the general contractor in order to establish unjust enrichment, opined the allegations of the petition were sufficient to raise this issue by inference. Thus the majority of the *Green Quarries* court rejected the argument here asserted by the Sinklers and while there was disagreement regarding the sufficiency of the allegations of the plaintiff's petition, all seven judges agreed "[t]he crucial element of this case is whether the landowner has paid the general contractor." *Id.* at 271.

 Payment of the contract price by the landowner is also crucial to the disposition of this case. Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is based primarily on the principle of unjust enrichment. *Green Quarries*, 676 S.W.2d at 264. Thus a landowner's retention of the benefit from improvement to his property by materials supplied by a subcontractor without paying the reasonable value thereof, is inequitable and the mere absence of privity will not defeat the subcontractor's right to recover the reasonable value of such materials. However, where the landowner has paid a general contractor for the materials by paying the contract price, he is not unjustly enriched because he has paid for what he received. Even though the subcontractor remains unpaid and thus suffers detriment, equity will not require the owner to pay twice. *Green Quarries*, at 264. That the legislature has seen fit to afford the subcontractor a measure of protection through the mechanics lien statute does not alter the equitable principle applicable where the subcontractor fails to avail himself of the statutory remedy. Therefore, it has been consistently held that non-payment by the owner is an essential element which must be pleaded and proved by a subcontractor seeking to establish a cause of action for quantum meruit. *Lee Bros. Contractors v. Christy Park Baptist Church*, 706 S.W.2d 608, 608 (Mo.App.1986); *Roy A. Scheperle Const. Co. v. Seiferts, Inc.*, 687 S.W.2d 222, 223 (Mo.App.1984).

International acknowledges the rule set forth in these cases but argues that it has no application here because Futhey, the general contractor, was not paid the full contract price. This argument is misdirected. The question of unjust enrichment focuses not upon what the contractor has received, but rather what the owner has paid. After paying the full contract price to construction escrow services under the escrow agreement, the Sinklers no longer owned the money and retained no interest therein other than that the funds be disbursed pursuant to the terms of the agreement. *Forest Hills Const. Co. v. City of Florissant*, 562 S.W.2d 322, 328 (Mo. banc 1978). Having paid the amount they were required to pay under the construction contract in the manner specified in that contract, the Sinklers were entitled to receive a completed residence in return. No unjust enrichment accrued to the Sinklers because Futhey defaulted forcing them to expend additional sums in order to obtain what they were entitled to under the contract.

In reaching the difficult decision regarding which of two innocent parties must bear the loss occasioned by the default of a third party, courts must be guided by the established principles which maintain order in our society and stability in our business community. Although both International and the Sinklers would seem to have legitimate, albeit uncollectible, breach of contract claims against Futhey, neither has a breach of contract claim against the other. In seeking to recoup its loss International assumed the burden of pleading and proving facts which establish a cause of action. International failed to prove compliance with the statutory requirements essential to the impression of a lien against the Sinklers' property. The evidence fails to show that the Sinklers were unjustly en-

riched, an essential element of a quantum meruit claim. No other theory is advanced as a basis for International to recover from the Sinklers the amount Futhey owed but failed to pay.

Accordingly, we are constrained to reverse the judgment in favor of International and against the Sinklers. We recognize that this does not put an end to the dispute between them. Both claim rights to the funds held by Escrow Construction Service which include the undisbursed balance of approximately $12,500, the additional $15,-000 deposited by the Sinklers in order to obtain a clear title and accrued interest. At the time of trial, this fund amounted to $31,446.81. International lays claim to the reasonable value of the materials it supplied, $24,094.28 plus interest from March 6, 1986. The Sinklers claim a right to have the additional $15,000 deposit refunded plus a right to reimbursement of their costs to finish the construction giving them the completed residence they were entitled to receive under the contract with Futhey. Construction Escrow Services is not a party to this action and the fund is not before this court. Therefore, we are without jurisdiction in this case to resolve these disputed claims.

The judgment in favor of International and against the Sinklers is reversed. In view of this disposition, International's appeal from the denial of pre-judgment interest is dismissed as moot.

HAMILTON, P.J., and STEPHAN, concur.