SACHS ELECTRIC COMPANY, Plaintiff, Bazan Painting Company, Plaintiff/Appellant/Cross–Respondent, Guarantee Electrical Construction Company, d/b/a Guarantee Electrical Company, Plaintiff, and Charles E. Jarrell Contracting Co., Inc., Plaintiff/Intervenor Plaintiff/Appellant,

v.

HS CONSTRUCTION COMPANY, Defendant, South Side National Bank, Defendant, Anheuser–Busch, Inc., Defendant/Respondent/Cross–Appellant, Anheuser–Busch Companies, Inc., Defendant/Respondent/Cross–Appellant, Metal Container Corporation, Defendant/Respondent/Cross–Appellant.[1]

No. ED 79996.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 24, 2002.

---

1. Sachs Electric Company, Guarantee Electrical Construction Company, d/b/a Guarantee Electrical Company, HS Construction Company, and South Side National Bank are not parties in this appeal.

Richard A. Stockenberg, St. Louis, MO, for Appellant–Cross–Respondent.

William T. Weidle, Jr., St. Louis, MO, Appellant.

John S. Meyer, Jr., Lisa Anne Houdyshell, David S. Slavkin, Bryan Cave LLP, St. Louis, MO, for Respondents–Cross Appellants.

Before GEORGE W. DRAPER III, P.J., and MARY R. RUSSELL, J. and MARY K. HOFF, J.

PER CURIAM.

This appeal arises out of Amended Findings of Fact, Conclusions of Law, Order and Judgment (amended judgment) entered after a non-jury trial in consolidated cases to enforce mechanic's liens, for equitable liens, and for relief in quantum meruit and/or unjust enrichment. At issue in this appeal is the circuit court's decision regarding the liability of Anheuser–Busch, Incorporated, Anheuser–Busch Companies, Inc., and Metal Container Corporation[2] (collectively referred to as Anheuser–Busch) to Bazan Painting Company (Bazan) and Charles E. Jarrell Contracting Company, Inc. (Jarrell) for money due to Bazan and Jarrell for work they performed in Texas and Missouri under subcontracts they had with a now-bankrupt general contractor, HS Construction Company. We reverse in part, affirm in part, and remand.

## CHRONOLOGY OF EVENTS

Prior to January 18, 1999, HS Construction Co., as general contractor, and Anheuser–Busch, as owner, entered into contracts for construction and repair projects on various premises, including for this appeal's purposes, premises in the St. Louis, Missouri area, in Rome, Georgia, and in Houston, Texas. HS Construction Co.

---

2. Metal Container Corp. is a subsidiary or related corporation to Anheuser–Busch, Inc.

also entered into various subcontracts with Bazan and Jarrell for work pertaining to those projects. Bazan and Jarrell have not been paid in full for the work they performed under those subcontracts.

On January 18, 1999, an involuntary bankruptcy proceeding was filed against HS Construction Co. On February 16, 1999, Jarrell filed a mechanic's lien against Anheuser–Busch real estate. The bankruptcy court lifted the stay as to Bazan on February 2, 2000, as to Anheuser–Busch on June 21, 2000, and as to·Jarrell on December 12, 2000. Bazan and Jarrell, among others, filed separate petitions against Anheuser–Busch, Inc., and others, seeking to recover the money allegedly due for the unpaid work. The circuit court consolidated those cases.

After the parties, other than Jarrell, had a non-jury trial, and after Jarrell's lawsuit was consolidated with the other consolidated cases and submitted on motions for summary judgment, the circuit court entered its amended judgment. In its amended judgment the circuit court: ·

(1) awarded Bazan $70,591.31 against Anheuser–Busch, Inc., together with interest at the legal rate;

(2) awarded Bazan $2,987.90 against Metal Container Corp., together with interest at the legal rate;

(3) awarded Jarrell $16,851.00 against Anheuser–Busch, Inc., together with interest at the legal rate;

(4) entered judgment in favor of Anheuser–Busch Companies, Inc., Anheuser–Busch, Inc., and Metal Container Corp.,

and against Jarrell on its mechanic's lien claim; and

(5) entered judgment in favor of Anheuser–Busch Companies, Inc., Anheuser–Busch, Inc., and Metal Container Corp. and against Bazan on its equitable lien and constructive trust claims. The circuit court also expressly addressed certain other claims and then dismissed with prejudice any claim not "expressly determined or dismissed" in other parts of the judgment or proceedings.

These appeals and cross-appeal followed.

*Jarrell's Appeal*

In its three points on appeal, Jarrell urges the trial court erred (1) in dismissing its mechanic's lien count as not filed within six months because Anheuser–Busch was estopped from asserting this defense and no lawsuit would "be a complete action" in the absence of the bankrupt general contractor; (2) in dismissing its mechanic's lien count for untimeliness because Missouri law allows suspension or tolling of the time period for filing when Anheuser–Busch "has engaged in affirmative conduct unmistakably likely to mislead" Jarrell; and (3) in denying Jarrell's claim for a declaration of and a disbursement from a "construction trust" fund because Missouri law permits unpaid subcontractors to recover surplus funds in the hands of an owner on such a theory.[3]

Because the circuit court resolved Jarrell's claims by summary judgment, we review the judgment on Jarrell's claims *de novo.* *ITT Commercial Fin. Corp. v.*

---

**3.** Anheuser–Busch moved to strike Jarrell's second brief on the grounds it merely supplemented Jarrell's initial brief and its appendix contained documents that are not part of the legal file and are not referenced by Jarrell in its brief. In response, Jarrell agreed that the documents in the appendix were improperly attached, sought leave to file those docu-

ments, and sought an award of attorneys' fees and costs. Anheuser–Busch also requested attorneys' fees as part of its reply to a "suggestions of fact" filed by Jarrell. We grant Jarrell's request for leave to file as part of the legal file the documents attached as an appendix to its second brief. We deny the motion to strike and requests for fees and costs.

*Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A summary judgment movant has the burden "to show a right to judgment flowing from [material] facts about which there is no genuine dispute." *Id.* at 378. Whether or not summary judgment is proper is a question of law, and we do not need to defer to the circuit court's grant of summary judgment. *Id.* at 376. We consider the record in the light most favorable to the party against whom judgment was entered, and take facts set forth in affidavits and otherwise in support of the successful motion as true unless they are contradicted by the non-moving party's response. *Id.*

On December 21, 2000, Jarrell filed its petition against Anheuser–Busch, Inc., as well as the now-bankrupt HS Construction Co., seeking a total of $16,851.00, "exclusive of interest, costs and attorneys' fees," due for work itemized in its mechanic's lien. Jarrell sought this relief through a mechanic's lien claim and an unjust enrichment claim. Those claims arise out of the unpaid subcontract work Jarrell performed for HS Construction Co. at Anheuser–Busch's St. Louis property.

With respect to Jarrell's mechanic's lien claim, the circuit court concluded that the pendency of the bankruptcy stay against HS Construction Co. did not affect Jarrell's ability to prosecute its mechanic's lien action against Anheuser–Busch, Inc.; Jarrell timely filed its notice of mechanic's lien; but Jarrell's mechanic's lien claim was barred due to Jarrell's failure timely to file the mechanic's lien lawsuit against Anheuser–Busch, Inc. Specifically, the circuit court stated:

> Jarrell's mechanic's lien claim is barred. By the plain terms of Section 429.170, RSMo 2000, Jarrell was obliged to file its action with[in] six months after filing notice of lien with the Circuit Clerk. Although HS [Construction]

may have been a necessary party to such an action, it does not follow that the bankruptcy stay tolled the statute of limitations as to [Anheuser–Busch]. Rule 52.04(b), Mo.R.Civ.P., expressly provides for the situation in which a claim can proceed even in the absence of a necessary party. Jarrell appears to assert the novel principle that inability to join a necessary party tolls the running of a statute of limitations with respect to all other parties. That cannot be true. Although there may be obstacles to proceeding with a mechanic's lien action when the general contractor is beyond the court's jurisdiction, it does not follow that defendants who could be sued cannot assert the statute of limitations by reason of that fortuitous circumstance.

The circuit court entered judgment in favor of Anheuser–Busch, and against Jarrell, on Jarrell's mechanic's lien claim.

With respect to Jarrell's unjust enrichment claim, the circuit court found that Jarrell had a viable quantum meruit claim against the Anheuser–Busch entity owning the premises where the work was performed and Jarrell was entitled to relief unless Anheuser–Busch paid HS Construction Co. on the same claim. Because Anheuser–Busch had not paid the full amount of the general contract proceeds to HS Construction Co., or actually paid the full amount of contract proceeds to other subcontractors, the circuit court found Anheuser–Busch was liable on Jarrell's quantum meruit claim and found that "[t]he record on Jarrell's motion for summary judgment establishe[d] Jarrell's right to judgment as a matter of law on its claim in *quantum meruit* against Anheuser–Busch, Inc." The circuit court awarded Jarrell $16,851.00 against Anheuser–Busch, Inc., together with interest at the legal rate. Notably, Anheuser–Busch, Inc. has not pursued an

appeal from the $16,851.00 judgment in favor of Jarrell and against Anheuser–Busch, Inc.

The record does not reveal an express decision by the circuit court with respect to any other unjust enrichment claim pursued by Jarrell. Therefore, we understand any "construction trust" theory pursued by Jarrell was resolved by the circuit court's dismissal with prejudice of "all claims not heretofore expressly determined or dismissed" as set forth at the end of its amended judgment.

■ Jarrell first challenges the circuit court's decision that its mechanic's lien claim was barred as untimely because Jarrell did not file a mechanic's lien lawsuit within six months after the filing of the mechanic's lien as required by Section 429.170 RSMo 1994. Jarrell urges that the stay in effect when HS Construction was in bankruptcy tolled the six-month period for filing a mechanic's lien lawsuit against Anheuser–Busch, Inc. because, as the general contractor, HS Construction Co. was a necessary party to such a lawsuit and Jarrell could not pursue a claim against HS Construction Co. during the pendency of the bankruptcy stay. To support this argument, Jarrell relies on the Western District's decision in *Major Lumber Co. v. G & B Remodeling, Inc.*, 817 S.W.2d 474 (Mo.App. W.D.1991).

In that case Major Lumber had supplied materials to G & B Remodeling for the construction of a residence, and G & B Remodeling did not pay Major Lumber for those materials. *Id.* at 475. Major Lumber filed a mechanic's lien on May 10, 1989; G & B Remodeling filed for relief under Chapter 11 of the United States Bankruptcy Code the next day; Major Lumber filed a motion for relief from the automatic stay on August 30, 1989; the bankruptcy court entered an order lifting the stay in less than a month thereafter; and Major Lumber filed its petition to enforce the mechanic's lien against the residence on November 15, 1989, or about five days after the end of the six-month period for filing a mechanic's lien action. *Id.* A bank defendant and a trustee defendant moved to dismiss the petition on the ground the six-month period in Section 429.170 RSMo 1986[4] had expired before the petition was filed because the filing of the bankruptcy did not toll that period. *Id.* at 475–76. The trial court granted the motion. *Id.* at 476. The Western District reversed, deciding in relevant part that "the time prescribed for enforcing a lien under Section 429.170 [RSMo 1986] is tolled during the time an automatic stay under the U.S. Bankruptcy Code is in effect." *Id.* at 478.

We find this aspect of the *Major Lumber* decision applies to resolve this part of Jarrell's appeal.[5] Here there is no dispute that the automatic stay of 11 U.S.C. Section 362(a) went into effect when HS Construction Co.'s bankruptcy was filed on January 18, 1999, and that it was not lifted

---

4. The terms of this statute are identical to the terms of the 1994 version of the statute which applies in this case.

5. We do not need to decide, and are not now deciding whether, after a bankruptcy stay is lifted, a subcontractor must file a mechanic's lien action either within that portion of the six-month period that had not lapsed before the filing of the bankruptcy petition or within the thirty-day period set forth in 11 U.S.C. Section 108(c)(2). Here, Jarrell filed its peti-tion seeking to enforce the mechanic's lien approximately nine days after the stay was lifted. Therefore, Jarrell was well within either the six-month period, which had not lapsed to any extent because the bankruptcy was filed before Jarrell filed its mechanic's lien, or the thirty-day period of 11 U.S.C. Section 108(c)(2). To the extent *Major Lumber* addressed this issue we are not now adopting that portion of the opinion.

with respect to Jarrell's claims until December 12, 2000. In accordance with the *Major Lumber* decision, Jarrell's period for filing a mechanic's lien action did not commence until the stay was lifted on December 12, 2000. Jarrell filed the mechanic's lien action against Anheuser–Busch, Inc. within nine days of the lifting of the stay. That action was timely filed.

Anheuser–Busch Inc. urges the *Major Lumber* case is distinguishable and therefore inapplicable here, because the bankrupt in that case was the landowner against whose property the mechanic's lien would be filed, rather than the general contractor. Whether or not that is true, the decision itself does not specify which party is the landowner and which party is the general contractor. Nor did the court make such status significant to its decision. In fact, to reach its decision about the effect of the bankruptcy stay on the six-month period for filing a mechanic's lien lawsuit, the Western District relied heavily on the Illinois Supreme Court's decision in *Garbe Iron Works, Inc. v. Priester,* 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983), a case in which the general contractor, and not the landowner, filed for bankruptcy before the subcontractor filed its mechanic's lien action.

In that lawsuit, the subcontractor had supplied labor and materials to erect framework on property. *Id.* at 423. When it did not receive payment, the subcontractor sought to enforce its mechanic's lien, which required the subcontractor to join the general contractor and property owners in a lawsuit filed within two years of the completion of the work. *Id.* at 424. Before the expiration of those two years and before the filing of the mechanic's lien lawsuit, the general contractor filed for bankruptcy protection. *Id.* The subcontractor obtained an order lifting the stay on December 23, 1980, and filed its mechanic's lien lawsuit on March 16, 1981, or 42 days after the expiration of the two-year period. *Id.* The court characterized the issue. as "whether a bankruptcy filing by a necessary party in an action to enforce a mechanic's lien extends the amount of time the subcontractor has to file suit." *Id.* The Illinois Supreme Court found 11 U.S.C. Section 108(c) dispositive and answered the question affirmatively. *Id.* at 424.[6]

■ As Illinois reportedly requires, Missouri also makes joinder of the general contractor and property owner in any mechanic's lien action a requirement of such an action. *See* Section 429.190 RSMo 1994.[7] Thus, the general contractor is a necessary party to a mechanic's lien action in Missouri, and in light of *Major Lumber, supra,* and *Garbe Iron Works, Inc., supra,* its bankruptcy stay tolls or extends the time for filing of an action to enforce a mechanic's lien to a period after that stay is lifted.

Anheuser–Busch, Inc. additionally urges *Major Lumber* is inapplicable because in

---

**6.** As we noted earlier, we are not now deciding how much time after the lifting of the bankruptcy stay a subcontractor has in which to file a mechanic's lien action. Therefore, we are not now considering that part of the decision in *Garbe Iron Works, Inc.* that determined the subcontractor had the unused portion of the two-year filing period, rather than only thirty days under 11 U.S.C. Section 108(c)(2), after the lifting of the stay in which to file suit. *Id.* at 424–25.

**7.** This statute provides:

> In all suits under sections 429.010 to 429.340 the parties to the contract shall, and all other persons interested in the matter in controversy or in the property charged with the lien may be made parties, but such as are not made parties shall not be bound by any such proceedings.

that case the mechanic's lien claimant filed its request for relief from the stay promptly whereas in this case Jarrell "delayed almost twenty-two months before seeking relief" from the bankruptcy stay. We are not persuaded by this argued distinction. Most importantly, we find nowhere in our record the date on which Jarrell asked the bankruptcy court for relief from the stay. We also note that, while Jarrell did not receive a bankruptcy court order lifting the stay until December 2000, the other parties did not receive bankruptcy court orders lifting the stay until 2000, specifically in February and June. The record does not contain an explanation for the apparent delay in obtaining these bankruptcy court orders. Without more, we cannot determine the timeliness of Jarrell's request of the bankruptcy court. Additionally, we hesitate to impose a timeliness requirement on such a request when we can conceive of a situation where, through no fault of its own, a subcontractor cannot pursue a request in the bankruptcy court within the six-month period. Such a situation could arise, for instance, when the bankruptcy is filed a few days before the end of the six-month period.

We acknowledge Anheuser–Busch, Inc.'s concern that our decision could result in a subcontractor adversely affecting title of a non-bankrupt owner's property by filing a mechanic's lien that is not quickly resolved because it becomes part of a general contractor's bankruptcy and is not actively pursued by a prompt request of the bankruptcy court for lifting of the automatic stay. We also recognize, however, the possibility that a contrary decision could result in a subcontractor losing its right to obtain relief through a mechanic's lien because a property owner or the general contractor files bankruptcy after the subcontractor performs its work or supplies its materials and the automatic stay is in effect beyond the six-month period for the filing of the subcontractor's mechanic's lien action.

We conclude the circuit court erred in determining Jarrell's mechanic's lien claim was barred, because the automatic stay of the general contractor's bankruptcy tolled or extended the six-month period of time in which Jarrell had to file a mechanic's lien action and Jarrell timely filed such an action after the bankruptcy court lifted the stay.

Point one of Jarrell's appeal is granted.

In light of our decision on point one, we will not further address point two of Jarrell's appeal, which also focuses on the circuit court's dismissal of Jarrell's mechanic's lien claim.

■ Point three of Jarrell's appeal challenges the circuit court's denial of Jarrell's apparent claim for relief based upon a "construction trust" theory. Any such claim was part of Jarrell's unjust enrichment claim. The unjust enrichment claim also encompassed Jarrell's quantum meruit claim, the claim upon which Jarrell received judgment in its favor and against Anheuser–Busch, Inc. for the full amount requested by Jarrell. The quantum meruit claim and any "construction trust" claim arise out of the same work Jarrell performed for and supplies Jarrell provided to Anheuser–Busch pursuant to the subcontract with HS Construction. Because Jarrell received relief in quantum meruit and that claim is based on the same facts that form the basis of Jarrell's "construction trust" claim, we decline to address this point further. Jarrell has received all the relief to which it is entitled based upon unjust enrichment.

Point three of Jarrell's appeal is denied.

### Bazan's Appeal and Anheuser–Busch's Cross–Appeal

■ In its sole point on appeal, Bazan urges the circuit court erred in failing to

designate the commencement date for prejudgment interest on its quantum meruit awards to Bazan because demand for payment was made, and Bazan's claims were liquidated in that Anheuser–Busch did not contest the value of those claims.

In the cross-appeal to Bazan only, Anheuser–Busch presents two points. First, Anheuser–Busch, Inc. argues the circuit court erred in entering a quantum meruit judgment against it under Missouri law for labor and services provided in Houston, Texas, because Texas law governs that claim and Bazan waived its quantum meruit claims by failing to perfect its liens under Texas' mechanic's lien, retainage lien, or trapping statutes. Second, Metal Container Corp. contends the circuit court erred in entering a quantum meruit judgment against it for work at Rome, Georgia, because Metal Container Corp. had already paid more than the contract price on that project and Georgia law governs that claim and, under Georgia law, Bazan waived its quantum meruit claims by failing to perfect its lien under Georgia's mechanic's lien statutes.

Because we need not address Bazan's sole point if the cross-appeal is successful, we will address the cross-appeal first.

In the first point of the cross-appeal, Anheuser–Busch, Inc. argues the circuit court erred in entering a quantum meruit judgment against it under Missouri law for labor and services Bazan provided in Houston, Texas, because Texas law governs that claim and Bazan waived its quantum meruit claims by failing to perfect its liens under Texas' mechanic's lien, retainage lien, or trapping statutes.

The judgment challenged in this point resulted from a non-jury trial at which the parties presented a stipulation of facts, agreed upon exhibits, one deposition, and one live witness. We affirm a judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Webcon Group, Inc. v. S.M. Properties, L.P.*, 1 S.W.3d 538, 541 (Mo.App. E.D. 1999); *Protective Cas. Ins. Co. v. Cook*, 734 S.W.2d 898, 904 (Mo.App. E.D.1987). We "accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence." *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App. E.D.1998). This is our standard of review even where the facts are derived from a stipulation and agreed upon exhibits and when the parties have not conceded all ultimate facts or factual inferences. *In the Matter of Estate of Mark E. Snyder*, 880 S.W.2d 596, 598 (Mo.App. E.D.1994). While we defer to the trial court's factual findings, because the trial judge is in a superior position to assess credibility, "we independently evaluate the trial court's conclusions of law." *Mullenix–St. Charles Properties, L.P.*, 983 S.W.2d at 555. Moreover, we will affirm the judgment if it is correct under any reasonable theory supported by the evidence. *Webcon Group, Inc.*, 1 S.W.3d at 541.

The circuit court found in relevant part that Missouri law applied and concluded Anheuser–Busch, Inc., was liable on Bazan's quantum meruit claims for the Houston brewery work in the total amount of $70,591.31. In support of its decision that Missouri law applied, the circuit court found HS Construction Co., Bazan, and Anheuser–Busch, Inc. are Missouri corporations with their principal places of business in St. Louis. The circuit court also "infer[red] from the record that each general or 'prime' contract and each subcontract at issue was negotiated and entered into in Missouri"; and noted each of those contracts, which was between Anheuser–Busch and HS Construction Co., stated it

would be construed and interpreted under Missouri law. The circuit court further noted each of the subcontracts, which were between a subcontractor and HS Construction Co., "incorporate[d] the terms of the general or 'prime' contracts." In deciding that Missouri law applied, the circuit court stated:

> The disposition of this case is governed by Missouri law. All of the general or "prime" contracts at issue contain express choice-of-law provisions, dictating that Missouri law shall apply to any contract issues arising between the parties. All of the subcontracts [with an exception not pertinent to this appeal] incorporate the general or "prime" contract by reference. E.g., Pl.Ex. 3, p. 3, [paragraph] 1.1. In addition, all of the parties are either Missouri corporations or have their principal place of business in Missouri. The contracts and subcontracts were negotiated and executed in Missouri. In addition, [two subcontractors other than Bazan] performed their services entirely in Missouri. While it could be argued that the jurisdictions in which the construction work was actually performed have a more significant relationship to the parties' disputes, the Court gives decisive importance to the parties' residence and their expressed choice of law, which is entirely rational under the circumstances of this case. See *United Siding Supply, Inc. v. Resi-*

*dential Improvement Services, Inc.,* 854 S.W.2d 464, [466] (Mo.App.W.D. 1993); see also *Superior Equipment Co. v. Maryland Cas. Co.,* 986 S.W.2d 477, [480–81] (Mo.App.E.D. 1998).

Here, the issue focuses on whether or not the circuit court properly determined Missouri law, rather than Texas law, applies to Bazan's claim against Anheuser–Busch, Inc., for money due for work Bazan performed in Houston, Texas. The parties do not dispute that Missouri provides a subcontractor a recovery in quantum meruit as an alternative to a statutory mechanic's lien remedy when the subcontractor does not receive payment for work performed, whereas in Texas a subcontractor is limited to available statutory remedies only. The parties also do not dispute that Bazan failed to comply with available Texas statutory remedies.

We select the applicable substantive law according to Missouri conflict-of-law doctrines, which apply principles set forth in the Restatement (Second) of Conflicts of Laws. *Stone v. Crown Diversified Indus. Corp.,* 9 S.W.3d 659, 665 (Mo.App. E.D. 1999). We have not been directed to and have not located a section of that Restatement dealing directly with the situation in this case.

The circuit court appears to have expressly considered the elements set forth in Section 188[8] which provides a frame-

---

8. Section 188 of the Restatement provides:

Law Governing in Absence of Effective Choice by the Parties
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
(2) In the absence of an effective choice of law by the parties (see Section 187), the contacts to be taken into account in apply-

ing the principles of Section 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract,
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

work for determining which state's law applies to an issue in a contract for which the contracting parties did not make an effective choice of law: the place of contracting, the place where the contract was negotiated, the place where contract performance occurred, the location of the subject matter of the contract, and the contracting parties' place of business and place of incorporation. The court evaluates the five factors "based on their relative importance to the particular issue before the court. Different factors may be entitled to more weight in regard to one issue than in regard to another." *Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo.App. W.D.1997).

■ We are persuaded the circuit court properly considered those factors. To the extent Anheuser–Busch challenges the circuit court's decision regarding the significance of the location of the real property where the work was performed, we are not convinced the circuit court's decision constitutes reversible error. While it is true that the real estate on which the work was performed, and the performance of the work, were in Texas, there is no issue raised about the quality of the work performed, whether the work was performed, or whether the amount sought for the work is unreasonable or otherwise improper. In fact, Anheuser–Busch, Inc. and Bazan stipulated that Anheuser–Busch, Inc. was "aware of the work performed by . . . Bazan . . . and ha[d] no objections with

respect to the quality of the work so performed [and] ha[d] accepted said work, acknowledge[d it] ha[d] received a benefit therefrom and ha[d] an appreciation thereof." Moreover, those parties stipulated that "the amounts [sought by Bazan as set forth in the stipulation] accurately reflect the amounts due to [Bazan] for labor, material, and services provided under [its subcontracts with HS Construction Co. and] said sums are reasonable." Thus, the only issues between the parties pertain to the cause of action Bazan may pursue in its effort to seek payment for its completed work. As far as we can ascertain from the record, any payment will be made by Missouri corporations whose principal place of business is in St. Louis, Missouri. Under the circumstances, we conclude the circuit court properly considered and applied the elements set forth in Section 188 of the Restatement to the extent those elements should be addressed in determining which state's law to apply.

To the extent Section 6 of the Restatement should be expressly addressed,[9] we find its consideration also supports the application of Missouri law here. Section 6 of the Restatement states:

### Choice–of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

---

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in Sections 189–199 and 203.

9. Notably, Section 6 is referenced in Section 188, as well as in Chapter 9 of the Restatement, which addresses Property. Section 222 of the Restatement begins that Chapter and provides:

The General Principle
The interests of the parties in a thing are determined, depending upon the circumstances, either by the "law" or by the "local law" of the state which, with respect to the particular issue, has the most significant relationship to the thing and the parties under the principles stated in Section 6.

**456**

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

There is no Missouri statutory directive to determine which state's law applies to circumstances such as those in this case. Therefore, we must look to the factors set forth in subsection 2 of Section 6 of the Restatement.

The "needs of the interstate and international systems" factor is an effort to "further harmonious relations between states and to facilitate commercial intercourse between them" through choice-of-law rules. Comment d on subsection (2) of Section 6 of the Restatement. With respect to this factor, we perceive a slight favoring of Missouri under the circumstances of this case. Here, Missouri businesses entered into agreements in Missouri resulting in work being performed on real property in Texas owned by one of the Missouri businesses. This is not an instance where either the property owner or the general contractor or the subcontractor was a citizen, resident, or business of Texas. Work on Texas real estate underlies the parties' dispute, but is not the focus of the dispute. Rather, it is payment for that work that is at issue, and we are not persuaded that the application of Missouri law to that aspect of the parties' relationship and dispute would so adversely affect the facilitation of commercial intercourse between states that we should not weigh this factor in favor of Missouri.

■ The "relevant policies of the forum" factor requires us to keep in mind the purpose to be achieved by allowing a subcontractor to obtain compensation for work through Missouri's quantum meruit principles as an alternative to statutory remedies. *See* comment e on subsection (2) of Section 6 of the Restatement. "If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." *Id.* We have noted that in deciding "which of two innocent parties[, the property owner or subcontractor,] must bear the loss occasioned by the default of a third party, [the general contractor,] courts must be guided by the established principles which maintain order in our society and stability in our business community." *International Paper Co. v. Futhey,* 788 S.W.2d 303, 306 (Mo.App. E.D.1990). Missouri courts have concluded the statutory mechanic's lien is not an exclusive remedy but " 'simply a method of collecting a debt' " which does not preclude a judgment for the debt through application of the equitable principles of quantum meruit. *Webcon Group, Inc.,* 1 S.W.3d at 543. (quoting *State ex rel. Power Process Piping, Inc. v. Dalton,* 681 S.W.2d 514, 517 (Mo.App. E.D.1984)). In noting the property owner's non-payment of the amount owed is an essential element of a subcontractor's quantum meruit claim, we clarified that quantum meruit addresses the inequity of allowing a landowner to retain "the benefit from improvement to his property by materials supplied by a subcontractor without paying the reasonable value thereof." *International Paper Co.,* 788 S.W.2d at 306. Thus, the purpose of permitting a quantum meruit claim as an alternative to a statutory remedy is to

alleviate the inequity of permitting a landowner to retain the benefit from materials and services provided by a subcontractor without paying the reasonable value of those materials and services. This purpose would be furthered by applying this quantum meruit alternative to a Missouri subcontractor's claim for work it did for a Missouri corporation on real property that the Missouri corporation owned in Texas.

The next factor is the "relevant policies of other interested states." By this factor we are to "seek to reach a result that will achieve the best possible accommodation of these policies[;] appraise the relative interests of the states involved in the determination of the particular issue[; and apply the local law of] the state whose interests are most deeply affected." Comment f on subsection (2) of Section 6 of the Restatement. This factor weighs in favor of the application of Missouri law.

The statutory remedies available to a subcontractor in Texas are " 'primarily for the protection of the owner of the real estate.' " *Crockett v. Brady,* 455 S.W.2d 807, 810 (Tex.App.1970) (quoting preamble by Edward Young Boynton to Volume 16 Vernon's Annotated Texas Civil Statutes). Here, the owner of the Texas real estate is a Missouri corporation whose principal place of business is in Missouri. As discussed earlier, the policy of Missouri in allowing a subcontractor to seek payment through quantum meruit is to alleviate the inequity of having a landowner receive the benefit of services and materials without paying for their reasonable value. The application of Texas law in the circumstances of this case would clearly violate this purpose and deeply affect Missouri's effort not to permit a landowner to receive the benefit of a subcontractor's services and labor for free. Where, as here, the owner of the Texas real estate is a Missouri corporation with its principal place of

business in Missouri, and the subcontractor seeking payment is a Missouri corporation with its principal place of business in Missouri, we find the best possible accommodation of these two states' policies and these states' relative interests requires the application of Missouri law.

The fourth factor is the "protection of justified expectations," which addresses the unfairness and impropriety of holding "a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Comment g on subsection (2) of Section 6 of the Restatement. The choice-of-law provisions in the general contracts and subcontracts between the various parties are not directly pertinent in that there is no contract between Bazan and Anheuser–Busch, Inc. We conclude, however, that those provisions are a strong indication of the contracting parties' justified expectations of which state's law was going to apply to the obligations arising as a result of those contracts. All of the contracting parties, including Anheuser–Busch, Inc. and Bazan, are Missouri corporations with their principal places of business in Missouri. Under the circumstances, it would be unfair and improper to hold Bazan subject to Texas' prohibition against a subcontractor's quantum meruit remedy when Bazan clearly complied with Missouri law, which was the law expressly chosen by the parties in all the general contracts and subcontracts pertaining to Bazan's work at Anheuser–Busch, Inc.'s Houston brewery. This factor weighs in favor of the application of Missouri law.

The next factor, "the basic policies underlying the particular field of law," is not of significance here because the interested states have major differences in how they treat a subcontractor's non-compliance with statutory remedies available with respect to a land owner. The comment ad-

dressing this factor states it is "of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules." Comment h to subsection (2) of Section 6 of the Restatement. This factor does not weigh in favor of either Missouri or Texas.

Next is the "certainty, predictability and uniformity of result" factor which is "of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions." Comment i to subsection 2 of Section 6 of the Restatement. Due to the choice-of-law provisions in the general contracts and subcontracts, and as we discussed when addressing the protection of the parties' justified expectations, we find this factor also weighs in favor of the application of Missouri law.

The final factor, ease in determining and applying the applicable law, does not weigh in favor of applying either Texas or Missouri law.

On balance, we conclude the consideration of these factors requires the application of Missouri law to Bazan's claims regarding its work at Anheuser–Busch, Inc.'s Houston brewery. The circuit court did not err in applying Missouri law to those claims. Point one of Anheuser–Busch's cross-appeal is denied.

 In the second point of the cross-appeal, Anheuser–Busch challenges the entry of the quantum meruit judgment totaling $2,987.90, plus interest at the legal rate, in favor of Bazan and against Metal Container Corp., for work Bazan performed in Rome, Georgia. In relevant part, Metal Container Corp. urges the circuit court erred in granting relief under Missouri's quantum meruit principles when Metal Container Corp. has paid out more than the contract price.

In its initial brief, Bazan "accept[ed]" that Metal Container Corp. paid out more than the contract price for the Rome, Georgia, project and "concede[d]" the circuit court erred in entering the quantum meruit judgment for Bazan's work on that project. Because Metal Container Corp. has paid out more than the contract price, Bazan cannot establish Metal Container Corp.'s non-payment of the contract price, which is an essential element of a quantum meruit claim. See *International Paper Co.*, 788 S.W.2d at 306. We will not address Bazan's one-sentence assertion that this part of the judgment is supported by a constructive trust theory, because no citation to the record or to legal authority, and no discussion in support of this position, is provided by Bazan.

Point two of Anheuser–Busch's cross-appeal is granted, and this part of the judgment is reversed.

 In its sole point on appeal, Bazan urges the circuit court erred in failing to designate the commencement date for prejudgment interest on the quantum meruit awards to it because demand for payment was made and its claims were liquidated in that Anheuser–Busch did not contest the value of those claims. Anheuser–Busch responds only on the ground this issue is moot and need not be reached by this Court because the quantum meruit judgments in Bazan's favor should be reversed. Because we uphold the quantum meruit judgment in Bazan's favor with respect to its work at the Texas brewery, we will address this point regarding that award only.

We note that our standard of review is the same as for our review of the cross-appeal.

In its amended petition, Bazan sought interest on the amount due for the work it

performed at the Houston Brewery. While the circuit court awarded Bazan interest at the legal rate, it did not specify the date from which prejudgment interest would run. We have determined that "[t]he actual date from which prejudgment interest should be calculated is a factual question for the trial court." *American Property Maintenance v. Monia,* 59 S.W.3d 640, 646 (Mo.App. E.D.2001) (citing *Dave Kolb Grading Inc. v. Lieberman Corp.,* 837 S.W.2d 924, 934 (Mo.App. E.D. 1992)). Therefore, we will remand the $70,591.31 judgment against Anheuser–Busch, Inc. and in favor of Bazan for the circuit court's determination of the date from which the prejudgment interest runs on that judgment and the amount of such interest.

Bazan's point is granted.

In summary: The circuit court's judgment that Jarrell's mechanic's lien claim is barred as untimely is reversed and remanded for further proceedings. By this remand, we are not authorizing Jarrell to obtain a double monetary recovery from Anheuser–Busch, Inc. for mechanic's lien relief and quantum meruit relief due to the same work and materials. The $70,591.31 quantum meruit judgment against Anheuser–Busch, Inc. and in favor of Bazan is affirmed, and remanded for the circuit court's determination of the date from which the prejudgment interest runs on that judgment and the amount of such interest. The $2,987.90 quantum meruit judgment against Metal Container Corp. and in favor of Bazan is reversed.