**COUNTY ASPHALT PAVING, COMPANY, INC.,**
Respondent,

v.

**MOSLEY CONSTRUCTION, INC., Defendant,**

**Christian Embassy Church, Appellant.**

No. ED 89415.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 4, 2007.

Steve D. Brooks, St. Louis, MO, for appellant.

Llynn K. White, St. Louis, MO, for respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

Christian Embassy Church (hereinafter, "Church") appeals from the trial court's grant of summary judgment in favor of County Asphalt Paving Company, Inc. (hereinafter, "CAPC") on its claim for quantum meruit. Church raises one point on appeal, alleging the trial court erred in granting summary judgment in that CAPC's claim fails as a matter of law because Church paid for the benefit it received, and as a result, Church was not enriched unjustly. We reverse and remand.

The facts are generally undisputed. Church sought to build a new worship facility in Black Jack, Missouri, in 2003. Church obtained a construction loan from U.S. Bank for approximately $1.2 million dollars. These funds were placed into an escrow account with Title Insurers Agency, Inc. (hereinafter, "Title Company"). Church hired Mosley Construction, Inc. (hereinafter, "Mosley") as its general contractor.

In March 2004, Mosley and CAPC executed a document entitled, "Standard Form of Agreement between Contractor

and Subcontractor." Pursuant to this agreement, CAPC agreed to furnish and install asphalt pavement for the new worship facility. Mosley agreed to pay CAPC $54,256.00 for materials and labor. The parties subsequently executed three change orders which resulted in additional work and materials for a total of $70,433.00 owed by Mosley to CAPC. It is undisputed CAPC fully performed and completed all of the work pursuant to the original agreement and change orders by June 2005. Construction on the worship facility was completed that same month.

Church approved the work, and CAPC received payments from Mosley in the amount of $51,594.30, leaving a balance of $18,838.70. At some point, Mosley approved payment of the amount owed to CAPC. On June 15, 2005, Title Company issued a check drawn from the escrow account for $18,838.70, but the check was returned for insufficient funds. It was later revealed Title Company's principals were indicted on federal mail and wire fraud charges related to the misappropriation of money from their clients' escrow accounts. Church was one of the clients who lost funds. A trustee was appointed to oversee Title Company's affairs and resolve its creditors' claims. Church is repaying the loan to U.S. Bank, including the funds that were misappropriated.

CAPC subsequently made demand upon Church and Mosley for the balance due under the agreement. Both refused to render payment to CAPC. Several subcontractors filed timely mechanic's liens, however, CAPC failed to do so.

CAPC filed suit against Church and Mosley on March 30, 2006, alleging three causes of action. CAPC's first and second counts were directed at Mosley and are not at issue in this appeal. CAPC's third count, entitled "Quantum Meruit," brought against Church and Mosley alleged they retained and received the benefit of the material and labors CAPC provided when it paved the parking lot at the worship facility. As a result, CAPC claimed the retention of the material and labor resulted in unjust enrichment because neither defendant paid CAPC for its services. CAPC sought actual damages in the amount of $18,838.70, reasonable attorneys' fees, and prejudgment interest.

Mosley filed its answer to CAPC's petition and admitted CAPC had not received payment from Mosley. Additionally, Mosley filed cross-claims against Church for breach of contract and quantum meruit, alleging Church failed to pay Mosley and various subcontractors, including CAPC. Shortly thereafter, Church filed its amended answer, generally averring it "lack[ed] sufficient information to admit or deny" to almost every allegation. Church raised no affirmative defenses to CAPC's claim, but raised a defense to Mosley's cross-claims, stating Mosley "may have received partial or full compensation from others not a party to this litigation for the claim at issue, thus entitling Church to a set off."

CAPC filed its motion for summary judgment on October 6, 2006. CAPC's motion alleges, *inter alia*, that Mosley approved payment of the amount owed as evidenced by the check issued by Title Company that was returned for insufficient funds. CAPC reiterated Church and Mosley refused and failed to pay amounts due and owing despite accepting material and labor. Church's response to CAPC's motion for summary judgment contained mere recitations of "admit or deny" similar to its amended answer, and attached the affidavit of Robert Griffin Sr. (hereinafter, "Griffin"), Church's pastor. Mosley did not file a response to CAPC's motion for summary judgment.

While the motion for summary judgment was pending, Church filed a "Motion to

Dismiss and Statement of Uncontroverted Facts" on February 9, 2007. For the first time during the litigation, Church raised the issue that CAPC's petition failed to state a claim for relief because CAPC failed to plead an essential element of its claim. Specifically, Church claims CAPC's petition did not allege that the property owner, Church, failed to pay the general contractor, Mosley, as required by the holding in *Green Quarries, Inc. v. Ernie Raasch*, 676 S.W.2d 261 (Mo.App. W.D. 1984). The trial court never formally called, heard, or ruled on Church's motion to dismiss.

The trial court entered its judgment on February 13, 2007, granting summary judgment in CAPC's favor on all counts, holding Mosley and Church jointly and severally liable for the amounts due. However, the trial court denied CAPC's request for interest and attorney's fees because "[Mosley and Church's] failure to timely pay [CAPC] was reasonable in that [Mosley and Church] had deposited all the funds to pay [CAPC] with Title Company in an escrow account. The funds were thereafter misappropriated by the [T]itle [C]ompany through no fault of [Mosley and Church] and were not available for timely payment." Church appeals.

In its sole point on appeal, Church argues the trial court erred in entering summary judgment on CAPC's behalf on its quantum meruit claim. Church asserts CAPC's claim fails as a matter of law in that CAPC's petition failed to allege Church did not pay Mosley for the cost of construction. In light of this defect, Church contends CAPC failed to prove it was enriched unjustly by receiving CAPC's services.

▪ It is well-settled that when considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant.

*ITT Commercial Fin. v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo. Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden of proof on a summary judgment movant is to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. "The moving party bears the burden of establishing a right to judgment as a matter of law." *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. banc 2006).

▪ CAPC argues Church's point on appeal fails for three distinct reasons. First, CAPC argues Church failed to respond properly to its motion for summary judgment and did not raise facts that would create a genuine issue. Moreover, CAPC argues any facts raised in Church's motion to dismiss are not properly before this Court, and therefore, cannot be considered by this Court when reviewing the motion for summary judgment.

▪ Rule 74.04(c)(2) sets forth the requirements a nonmovant must abide by when responding to a motion for summary judgment. The party responding to the motion "shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs." *Id.* Further, "[a] denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." *Id.* The requirements of this rule are mandatory.

*Wehmeyer v. FAG Bearings Corp.*, 190 S.W.3d 643, 649 (Mo.App. S.D.2006).

Our review of Church's response to CAPC's motion for summary judgment reveals it was deficient. Church's response did admit or deny each factual statement in numbered paragraphs and referred to Griffin's affidavit as support thereof. However, Griffin's affidavit purely admitted or denied factual allegations and did not raise any additional grounds showing there was a genuine issue of material fact that would overcome summary judgment.

In light of this deficiency, CAPC urges us to ignore the facts alleged in Church's motion to dismiss and disregard Church's argument that CAPC failed to state a claim for relief because this constituted a different theory than presented to the trial court below. We decline to do so.

Initially, we note our standard of review is *de novo*, which permits us to examine the whole record. *ITT Commercial Fin.*, 854 at 376. Upon reviewing the record, we find that while Church did not submit this argument in its response to CAPC's motion for summary judgment, it is clear from reading the trial court's judgment that it examined Church's motion to dismiss prior to ruling. Specifically, the trial court based its decision to deny CAPC an award for prejudgment interest and attorneys' fees upon the factual allegation that "[Mosley and Church's] failure to timely pay [CAPC] was reasonable in that [Mosley and Church] had deposited all the funds to pay [CAPC] with Title Company in an escrow account. The funds were thereafter misappropriated by the title company through no fault of [Mosley and Church] and were not available for timely payment." These factual allegations were not raised by either party until averred in Church's motion to dismiss. Thus, we cannot say the issue was not raised below, and

therefore, it is subject to review by this Court.

■ Second, CAPC argues summary judgment was appropriate in that Church failed to raise payment of sums as an affirmative defense in its amended answer or in the motion for summary judgment. Therefore, CAPC claims Church has waived this argument and cannot raise it on appeal. Church raised the issue of payment in its motion to dismiss, but alleged it was an essential element of CAPC's claim that had to be pleaded in CAPC's petition.

CAPC's argument was raised by the subcontractor seeking relief from property owners on a theory of unjust enrichment in *Green Quarries v. Raasch, supra.* There, the subcontractor argued it was not required to plead or prove the defendant property owner never paid the general contractor, but rather, payment was an affirmative defense that should have been raised by the property owners. *Green Quarries*, 676 S.W.2d at 265. The Western District rejected the subcontractor's argument, stating, "In a claim based on unjust enrichment, [the subcontractor's] contention cannot be correct. Payment or non-payment by the owner is a factor which determines whether the petition alleges the most important element for a recovery based on quasi-contract—unjust enrichment." *Id.* Therefore, it follows in the instant case Church was not required to plead payment as an affirmative defense to CAPC's petition.

■ Finally, CAPC argues summary judgment was appropriate in that it stated a cause of action against Church under a theory of quantum meruit. CAPC claims it alleged Church failed to pay for the work performed and if its pleading was deficient, any deficiency was waived when the case was submitted for summary judgment. We disagree.

"The essential elements of a quasi-*contract or* quantum meruit claim are that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services." *Olathe Millwork Co. v. Dulin,* 189 S.W.3d 199, 206 (Mo.App. W.D.2006). "The principal function of this type of implied contract is the prevention of unjust enrichment, and a claim for quantum meruit does not require the existence of an express agreement between the parties." *Bellon Wrecking & Salvage Co. v. Rohlfing,* 81 S.W.3d 703, 711 (Mo.App. E.D. 2002).

Both parties refer this Court to *Green Quarries,* which we have discussed briefly with respect to CAPC's second argument. In *Green Quarries,* the subcontractor entered into an agreement with a general contractor to provide rock and concrete for a home improvement project for the property owners. *Green Quarries,* 676 S.W.2d at 263. The materials were delivered and used for the improvements to the home. *Id.* The general contractor failed to pay the subcontractor for the materials, and ultimately filed for bankruptcy. *Id.* Subsequently, the subcontractor demanded payment from the property owners who refused to pay. *Id.* The subcontractor filed a petition alleging a quantum meruit action against the property owners, arguing retention of the rock and concrete unjustly enriched the property owners to the detriment of the subcontractor. *Id.* The property owners moved to dismiss the subcontractor's petition for failure to state a claim, which the trial court granted. *Id.*

The Western District affirmed the dismissal. *Id.* at 267. After discussing the general principles of quasi-contract law and the interrelationship between a theory of quantum meruit and unjust enrichment, the court specifically addressed how to resolve the question of whether the property owners were enriched unjustly by retaining the rock and concrete provided by the subcontractor. Initially, "the courts have repeatedly looked to whether the landowner has already paid the general contractor the amount due the general contractor under their express contract." *Id.* at 264. If the facts establish the property owner has paid the general contractor, "the owner's retention of [the materials] without further payment has been found not to constitute unjust enrichment." *Id.*

After rejecting the subcontractor's argument that payment or non-payment is an affirmative defense that must be raised by the property owners, which we have discussed *supra,* the *Green Quarries* court placed the burden upon the subcontractor to plead non-payment by the property owner to the general contractor in order to state a claim based on unjust enrichment. *Id.* at 265. The Western District explained such allegations are required to protect the property owner from being required to pay for the same benefit twice. *Id.* at 266. The court acknowledged that while "the subcontractor may remain unpaid and thus suffer detriment, equity will not require the owner to pay twice." *Id.* at 264. Thus, the court found the subcontractor's petition failed to state a cause of action based upon unjust enrichment in that it failed to allege the property owners did not pay the general contractor. *Id.* at 266.

The holding in *Green Quarries* was applied to the facts in *International Paper v. Futhey,* 788 S.W.2d 303 (Mo.App. E.D. 1990). In that case, a supplier sued the property owners and the general contrac-

tor on a claim for quantum meruit when the general contractor failed to pay the supplier for materials provided for construction of a home. *Id.* at 304. The property owners obtained a loan to finance the construction. The terms of the mortgage required the property owners to enter into a disbursing agreement with an escrow company and place the funds into an escrow account. *Id.* The escrow company would distribute funds to the general contractor, or on its behalf, during the course of construction; thus protecting the bank's interest. *Id.*

The general contractor hired the supplier, which sold and delivered lumber for use in the construction of the property owners' home. *Id.* The general contractor ultimately defaulted on its obligation to pay the supplier and abandoned construction on the property owners' home. *Id.* After failing to collect the balance due from the general contractor, the supplier approached the property owners and requested payment. *Id.* at 305. The property owners refused, and the supplier filed a mechanic's lien in response. *Id.* Upon learning of the lien, the escrow company required the property owners to provide additional money to satisfy the supplier's lien. *Id.* After providing the additional funds, the escrow service executed a final affidavit to the bank stating that all bills were paid or provided for, which permitted the property owners to close on the purchase of their home. *Id.*

The supplier sued the property owners and the general contractor on several counts, including a claim for quantum meruit against the property owners. *Id.* The claim for quantum meruit was submitted to a jury, which found in favor of the supplier and returned a verdict directing the property owners to pay the balance due. *Id.*

This Court reversed the jury's verdict, relying upon the holding in *Green Quarries.* After determining the facts were "strikingly similar," we agreed that "[p]ayment of the contract price by the landowner is also crucial to the disposition of this case." *Id.* at 306. Following a discussion of the facts and holding of *Green Quarries,* we held "non-payment by the owner is an essential element which must be pleaded and proved by the subcontractor seeking to establish a cause of action for quantum meruit." *Id.* We further explained:

> The question of unjust enrichment focuses not upon what the contractor has received, but rather what the owner has paid. After paying the full contract price to [the escrow company] under the escrow agreement, the [property owners] no longer owed the money and retained no interest therein other than that the funds be disbursed pursuant to the terms of the agreement. Having paid the amount they were required to pay under the construction contract in the manner specified in the contract, the [property owners] were entitled to receive a completed residence in return. No unjust enrichment accrued to the [property owners] because [the general contractor] defaulted forcing them to expend additional sums in order to obtain what they were entitled to under the contract.

*Id.* (internal citations omitted).

We find *Green Quarries* and *International Paper* on point and dispositive of this issue on appeal. Here, Church sought a construction loan to finance the building of the new worship center. The proceeds of that loan were placed into an escrow account to be disbursed to Mosley, the general contractor, and other subcontractors as the construction progressed. Title Company later misappropriated the funds and both Church and Mosley refused to

pay additional sums to CAPC to cover the cost of the asphalt work. CAPC's petition failed to plead or allege Church failed to pay for the materials, an essential element to its claim for quantum meruit pursuant to the holding in *Green Quarries. See also, Roy A. Scheperle Const. Co. v. Seiferts, Inc.,* 687 S.W.2d 222, 223 (Mo.App. W.D.1984)(rejecting subcontractor's quantum meruit claim against property owner holding property owner was not enriched unjustly when it was undisputed property owner paid general contractor in full, but general contractor did not pay); *Lee Bros. Contractors v. Christy Park Baptist Church,* 706 S.W.2d 608, 609 (Mo.App. E.D.1986)(reversing award to subcontractor against property owner on quantum meruit theory because subcontractor failed to plead and prove nonpayment by property owner); *Moore v. Henley,* 969 S.W.2d 266, 268 (Mo.App. W.D.1998)(same); *River's Bend Red–E–Mix, Inc. v. Parade Park Homes, Inc.,* 919 S.W.2d 1, 4 (Mo. App. W.D.1996)(affirming dismissal based on failure to state a claim on subcontractor's *quantum* meruit claim against property owner when subcontractor failed to plead and prove nonpayment by property owner).

Moreover, even if we liberally construed CAPC's pleadings to find it pleaded this essential element, CAPC has failed to prove it is entitled to summary judgment as a matter of law. Based upon the holding in *International Paper,* Church has fully paid the contract price and provided those funds to the Title Company, and therefore, has not been enriched unjustly by retaining the asphalt work and materials provided by CAPC. Church's point is granted.

As this Court acknowledged in *International Paper,* "In reaching the difficult decision regarding which of two innocent parties must bear the loss occasioned by the default of a third party, courts must be guided by the established principles which maintain order in our society and stability in our business community." *International Paper,* 788 S.W.2d at 306. While both CAPC and Church appear to have legitimate, albeit uncollectible, causes of action against Title Company and/or Mosley, neither has a claim against the other. Accordingly, we are constrained to reverse the judgment in CAPC's favor.

The trial court's judgment is reversed and remanded.

MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., concur.