CITY OF CAPE GIRARDEAU, ex rel,
and KLUESNER CONCRETERS,
Respondents,

v.

JOKERST, INC., and United Fire &
Casualty Company, Appellants.

No. ED 98654.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 11, 2013.

Terry R. Rottler, Ste. Genevieve, MO, for appellants.

John A. Loesel, Jackson, MO, for respondent.

GARY M. GAERTNER, JR., Chief Judge.

### Introduction

Appellant Jokerst, Inc. (Jokerst), was the general contractor on a construction project, and Respondent Kluesner Concreters (Kluesner) provided concrete work for the project as a subcontractor. The parties disputed the terms of their contract, and the trial court found in favor of Kluesner, ordering Jokerst to pay the balance due on Kluesner's invoices. Jokerst argues it had paid Kluesner the full lump sum amount of their agreement. We reverse in part, affirm in part, and affirm the result.

### Background

In 2009, the City of Cape Girardeau (City) requested bids for general contractors to complete a construction project called the Cape Splash Aquatic Center (Cape Project). In preparing its bid to submit to the City, Jokerst requested a bid from Kluesner for concrete work as a sub-

contractor on the Cape Project.[1] Jokerst provided Kluesner with information regarding the different types of concrete work that were needed for the Cape Project and approximate measurements for each.

Using the information Jokerst provided, Kluesner prepared a two-page bid, which Kluesner submitted to Jokerst by fax. The top of each page listed the word "Estimate." The total price for the work, listed at the bottom of the second page of the bid, was $104,747.40. Besides form information contained on both pages, the only other information on the second page was a short paragraph containing the following wording:

> This bid is good for thirty days after the above date. Final billing to be based upon actual measurements of completed work.

Kluesner's bid was dated May 1, 2009.

On May 29, 2009, Jokerst sent a fax (May 29 Fax) to Kluesner containing the following statements:

> We were the low bidder for [the Cape] Project. We have received a notice to proceed on the Project.
>
> Your bid of $104,747.40 was used for concrete for the job. This project was a lump sum contract. If you have any questions please call. We are looking forward to working with you.

In September of 2009, Kluesner began work on the Cape Project. Kluesner submitted an invoice that month and another in November of 2009. These invoices listed measurements for work completed, the unit price for each type of construction, and a total amount billed for the work completed as of the date of each invoice. Jokerst paid the amounts listed on both invoices, a total of $45,883.73.

In April 2010, Jokerst asked Kluesner to change construction of a particular curb for the Cape Project.[2] The original plan had called for a "curb and gutter," and Jokerst asked Kluesner to construct a "stand-up curb" instead. The parties did not discuss whether this change would affect the price of the curb, which Kluesner had listed originally in his bid as $20.90 per lineal square foot of curb and gutter. Kluesner completed the stand-up curb as requested.

Kluesner sent two additional invoices to Jokerst, dated April 27, 2010, and May 11, 2010. Each invoice contained the heading "Extra Work Order," underneath which was a line item for the portion of the stand-up curb that had been completed along with the unit price, $30.00 per lineal square foot. Jokerst paid for each item listed on the invoices except those for the stand-up curb. This left a difference of $24,090.00 Kluesner noted as remaining due from those invoices.

After Jokerst completed the Cape Project, Jokerst sent a check to Kluesner for $1,349.82, which represented the amount Jokerst had determined was still due to Kluesner based on Kluesner's original total bid price.[3] With the check, Jokerst

---

1. The parties disputed at trial whether Jokerst informed Kluesner during this initial conversation that Jokerst was seeking a bid for a lump sum contract. The trial court found this conversation did not contain any negotiations or communications of contract terms.

2. At trial, the parties disputed whether Jokerst or the City requested this change, and the trial court made a factual finding that Jokerst requested the change.

3. Jokerst had also requested a separate change in the concrete work, for which it voluntarily paid an extra $2,299.70. Jokerst calculated that it owed Kluesner the original total bid price of $104,747.40, plus the extra work of $2,299.70, minus what Jokerst had already paid, $104,695.13, and minus

sent a breakdown of its calculations for arriving at that check's amount, which was listed as "Final Check Amount Paid." Kluesner deposited the check, and thereafter filed suit for the remainder of its costs associated with the stand-up curb.

Kluesner asserted claims in contract and in quantum meruit. Jokerst argued it had fulfilled the terms of the parties' contract for a lump sum amount. Kluesner argued that the contract was not for a lump sum, but for the unit prices of the work actually completed. The trial court found that no lump sum contract existed, and that a contract for the unit prices contained in Kluesner's bid was created when the City accepted Jokerst's bid. The trial court also found that Jokerst did not make proper inquiries related to the price of the stand-up curb and what was necessary for submitting a change order in order to be compensated by the City for the additional cost. The trial court found that Jokerst benefitted from the stand-up curb because it allowed for easier completion of other portions of the Cape Project. Thus, the trial court concluded, Jokerst must pay the remaining amount due to Kluesner for the stand-up curb, $21,738.03.[4] The trial court also ordered Jokerst to pay prejudgment interest in the amount of nine percent per annum from the date of May 11, 2010. This appeal follows.

### Discussion

Jokerst raises four points on appeal. In Point I, Jokerst argues the trial court erred in concluding that a contract existed between the parties for the unit prices contained in Kluesner's bid, and alternatively that the trial court erred in not

accepting Jokerst's affirmative defenses of waiver and accord and satisfaction. Jokerst argues in its second point that the trial court erred in granting relief in quantum meruit because Jokerst did not receive any benefit from the stand-up curb and was not unjustly enriched. Jokerst argues in Point III that the judgment is ambiguous and inconsistent in that it fails to distinguish between the two claims Kluesner raised, and the judgment improperly grants Kluesner combined relief under two alternative theories of recovery. Finally, in Point IV, Jokerst argues that the trial court erred in granting Kluesner prejudgment interest because the parties' differing views of the contract between them resulted in unliquidated damages.

### Standard of Review

Our review of court-tried cases is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We defer to the factual findings of the trial court, but we review its legal conclusions *de novo*. *Mortenson v. Leatherwood Constr., Inc.* 137 S.W.3d 529, 531 (Mo.App. S.D.2004).

### Point I

Jokerst argues the trial court erred in concluding that Jokerst's use of Kluesner's bid and the City's subsequent award of the Cape Project to Jokerst formed a contract between Jokerst and Kluesner for the unit prices contained in Kluesner's bid. We agree.

---

$1,002.15, listed as "work billed to finish contract." This left a balance of $1,349.82.

4. This was the amount Kluesner requested in its petition. It is the cost Kluesner listed on

its invoices for the stand-up curb, minus the amount of the last check Jokerst had sent to Kluesner and the amount Jokerst had listed as "work billed to finish contract."

■ At issue here is the essential contract element of mutuality of assent. "In order for a contract to be formed, the parties must mutually assent to its terms." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994). There must be a "meeting of the minds" regarding the terms of the contract as shown by the parties' words or acts, and not by the understanding or supposition of one of the parties. *Id.*

■ Normally, a general contractor's use of a subcontractor's bid does not in itself form a contract, even when the general contractor is subsequently awarded the project. *See generally* 1 CORBIN ON CONTRACTS § 2.31 (Rev. ed.1993). There may be an exception where there is evidence of a definite, uniform, and known practice, whereby the use of a subcontractor's bid by a general contractor constitutes acceptance and creates a contract. *Accord Sharp Bros. Contracting Co. v. Commercial Restoration, Inc.*, 334 S.W.2d 248, 251 (Mo.App.1960).

■ Absent such evidence, Missouri courts have at times used the doctrine of promissory estoppel to require a subcontractor's performance when a general contractor has relied on the subcontractor's bid and is awarded the general contract. *See Branco Enters., Inc. v. Delta Roofing, Inc.*, 886 S.W.2d 157, 159 (Mo.App. S.D. 1994) (citing *Delmo, Inc. v. Maxima Elec. Sales, Inc.*, 878 S.W.2d 499, 504 (Mo.App. S.D.1994)). The elements of promissory estoppel differ from the traditional offer and acceptance components of a contract. Promissory estoppel consists of (1) a promise, (2) foreseeable reliance, (3) reliance, and (4) injustice absent enforcement. *Id.* In the construction context, courts have found a subcontractor's bid contains a promise to perform consistent with the terms of the bid, that a general contractor's reliance on the bid is foreseeable, and

thus once a general contractor has been awarded a contract and relied on the subcontractor's bid to do so, injustice would result if the subcontractor fails to perform under its bid. *See id.* at 160–61.

■ However, here we face the converse situation. Kluesner did not attempt to avoid the terms of its bid; rather, Kluesner performed the work and sought to have its bid terms enforced against the general contractor. Yet, in such a context, we have found no Missouri court finding existence of a contract or a promise enforceable against a general contractor created simply by the general contractor's use of the subcontractor's bid. In fact, the contrary is true. *See generally* 1 CORBIN § 2.31 (noting no mutuality of obligation: though subcontractor may be bound when general contractor uses subcontractor's bid, does not follow that general contractor must hire subcontractor if awarded project). This is because the general contractor's simple use of a subcontractor's bid is not analogous to the promise to perform if accepted contained in the subcontractor's bid. A general contractor, by soliciting bids, makes no promise inviting detrimental reliance to a subcontractor because there is no guarantee the general contractor will be awarded the project.

However, in certain circumstances where a subcontractor can show more than just the general contractor's use of the bid, a court may find promissory estoppel operates to bind a general contractor. For example, if the subcontractor can show that the general contractor made a promise to the subcontractor to hire the subcontractor if awarded the project, a court may use promissory estoppel to enforce the general contractor's promise in those cases. *See Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) (applying Missouri law; finding subcontractor sufficiently stated claim for

breach of contract and promissory estoppel where subcontractor alleged general contractor promised to hire subcontractor if awarded project, general contractor was awarded project and did not hire subcontractor); *contra Jamison Elec. L.L.C. v. Dave Orf, Inc.*, 404 S.W.3d 896, 898–99, 2013 WL 1411994, *2 (Mo.App. E.D.2013) (distinguishing *Maeda;* dismissing where subcontractor made no allegation of promise).

Here, there was no evidence of a uniform and definite practice whereby Jokerst's use of Kluesner's bid created a contract binding both parties upon the City's acceptance of Jokerst's bid. Additionally, there was no evidence that Jokerst made a definite promise to hire Kluesner if Jokerst received the contract from the City. *See Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007) (under elements of promissory estoppel, promise giving rise to cause of action must be definite and made in contractual sense). The fact that Jokerst did intend to hire Kluesner and Kluesner did perform the work does not change the fact that Jokerst's use of Kluesner's bid beforehand did not create a contract. *See Sharp Bros.*, 334 S.W.2d at 252–53. In this respect, the trial court erroneously declared the law.

Jokerst goes on to argue that in fact a contract for Kluesner to perform the concrete work for a lump sum amount existed, as evidenced by Jokerst's May 29 Fax and Kluesner's subsequent performance of the concrete work. In contrast, Kluesner argues that the May 29 Fax manifested assent to the terms of Kluesner's bid and created a contract based on the bid terms. We find this question irrelevant to the present appeal, as the sole damage award at trial was for the cost of the stand-up curb, which was included in neither alleged contract.[5]

■■ "Extra work" is work that is neither contemplated by the parties nor controlled by the contract. *Uhle v. Tarlton Corp.*, 938 S.W.2d 594, 597 (Mo.App. E.D. 1997). The stand-up curb was not originally contemplated by the parties, but came about as the result of Jokerst's request to change the original concrete plan. Neither party can show any existing contract term, whether under the alleged unit price contract or the alleged lump sum contract, governing how to handle such changes made to the project. Kluesner relies on its bid that stated final billing would be based on actual measurements of work performed for each item listed. However, the bid contains no unit price for a stand-up curb, and thus there was no agreement between the parties for that price. *See Hutchens v. Burrell Inc.*, 342 S.W.3d 399, 404 (Mo.App. W.D.2011) (price is material term in all contracts). Jokerst argues essentially that the alleged lump sum contract covered the stand-up curb because the practice between the parties was to request a change order for any extra work. However, the only evidence of any change order requirement was Jokerst's contractual obligation to the City to submit change orders requesting additional compensation from the City for unantic-

---

5. Despite this, if compelled to discern an underlying contract between the parties, under the factual circumstances here and given the following two principles, we would be hard-pressed to find mutual assent to either a lump sum term or unit price terms. *See F.S. Crook, Inc. v. C & R Heating and Serv. Co.*, 787 S.W.2d 763, 763–64 (Mo.App. E.D.1990) (where purported acceptance's terms differ from terms of offer, no contract formed); Restatement (Second) of Contracts § 20 (1981) ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . each party knows or each party has reason to know the meaning attached by the other").

ipated work.[6] Thus, even under either contract alleged by the parties, this stand-up curb request was not controlled by any contract.

As such, the stand-up curb was "extra work." *See Uhle*, 938 S.W.2d at 597. Therefore, regardless of the underlying contract between the parties, or lack thereof, the pertinent issue here concerns the terms of any agreement that arose regarding the stand-up curb.

The trial court made findings supported by substantial evidence that Jokerst requested the change in the curb and did not inquire about whether such change would result in a difference in price. Kluesner completed the stand-up curb. The parties dispute whose responsibility it was to ensure the change in price was known and who was responsible for completing any change order. However, there is no evidence of any contract term between Kluesner and Jokerst addressing extra work or assigning burdens of communication to either party, and we cannot do so here.

In light of these facts, we find no oral or written contract existed between Kluesner and Jokerst for the stand-up curb. *See Envtl. Waste Mgmt., Inc. v. Indus. Excavating & Equip., Inc.*, 981 S.W.2d 607, 611–12 (Mo.App. W.D.1998) (oral contract must have definite material terms); *cf. KC Excavating*, 141 S.W.3d 401, at 409 (Mo. App. W.D.2004) (unit price contract contained provision for extra work at denominated unit price); *and Massman Constr. Co. v. Kansas City*, 487 S.W.2d 470, 476 (1972) (lump sum contract included extra work provision). Rather, Jokerst requested work outside the originally contemplat-

ed project, and Kluesner performed. Thus, no recovery was available for the stand-up curb under a breach of contract theory. Likewise, Jokerst's affirmative defenses are inapposite here. Point granted.

## Point II

Jokerst next argues that the trial court erred in granting Kluesner recovery in quantum meruit because Jokerst was not unjustly enriched. We disagree.

Where there is no formal contract, a promise to pay for services or materials may be implied by the law. This is referred to as quasi-contract or quantum meruit. *See Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo.App. W.D.1984) (citing *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 884 (1943)). The essential elements of such a claim are (1) that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, (2) that the materials or services had reasonable value, and (3) that the defendant has failed and refused to pay the reasonable value of such materials or services despite the demands of plaintiff. *County Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo. App. E.D.2007). "The principal function of this type of implied contract is the prevention of unjust enrichment." *Id.* (quoting *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 711 (Mo.App. E.D. 2002)). In quantum meruit, there is no requirement of an express agreement between the parties or a promise on the part

---

**6.** Jokerst had previously approved a separate extra payment to Kluesner for a change in concrete work that Jokerst requested, but Kluesner did not submit a change order in that instance and Jokerst did not require one. Jokerst argues this is because the extra work was for Jokerst, and not for the City, thus Jokerst did not need a change order from the City. Jokerst argues it did need one for the stand-up curb, but Jokerst's obligation to the City does not shed light on whether there was any existing obligation on Kluesner's part.

of the party to be bound. *Id.; Green Quarries,* 676 S.W.2d at 264.

Jokerst argues that it received no unjust enrichment from the stand-up curb, but rather it is the City that retained the curb and derived benefit from it. However, in construction contexts, "courts have repeatedly looked to whether the landowner has already paid the general contractor the amount due the general contractor under their express contract." *County Asphalt Paving,* 239 S.W.3d at 710 (quoting *Green Quarries,* 676 S.W.2d at 264). If the owner has paid the general contractor, then the owner is not unjustly enriched by retaining the materials or services provided by the subcontractor. *Id.* Though the subcontractor remains unpaid, this rule equitably protects the owner from double-payment for a project. *Id.*

Nonetheless, Jokerst asserts that it was not paid by the City for the stand-up curb due to Kluesner's failure to provide adequate information so that Jokerst could submit a change order. Jokerst argues that Kluesner therefore waived its right to payment for the stand-up curb. However, the trial court found that Jokerst failed to timely request such information. Furthermore, Kluesner had no contractual obligation to ensure Jokerst fulfilled Jokerst's own obligation to the City regarding a change order, and Jokerst may not now shift its obligation to Kluesner. It is impossible to waive a right by failing to fulfill a nonexistent contractual obligation.[7] The fact remains that the City paid Jokerst under the terms of their contract.[8]

In such cases, courts have allowed subcontractors to maintain causes of action against general contractors. *See, e.g., County Asphalt Paving,* 239 S.W.3d 704; *Little Joe's Asphalt v. C.W. Luebbert Constr. Co.,* 74 S.W.3d 830 (Mo.App. W.D. 2002); *Berra v. Bieg Plumbing Co.,* 584 S.W.2d 116 (Mo.App. E.D.1979). The three elements of quantum meruit above do not require a finding that the general contractor retained the benefit of the materials or services, but only that the general contractor requested and accepted them.

Here, the trial court found Jokerst requested the stand-up curb. Kluesner provided the stand-up curb as requested, and the stand-up curb had value. Despite Kluesner's demands for payment, Jokerst did not pay Kluesner for the stand-up curb. Todd Kluesner, president and owner of Kluesner, testified that he researched the prevailing rate for stand-up curbs in the area. He testified that the third party he had contacted told him that the prevailing rate was $40 per lineal square foot, which is $10 more per lineal square foot than Kluesner charged Jokerst. Thus, there was substantial evidence from which the trial court could determine the amount Kluesner requested was reasonable. *See Little Joe's,* 74 S.W.3d at 834 (subcontractor must show rate claimed was objectively reasonable in marketplace). Though the trial court did not make a specific finding regarding reasonable value, we assume it found the facts in accordance with the result. Mo. R. Civ. P. 73.01(c) (2012);

7. Further, even if some requirement for Kluesner to submit a change order existed, under the circumstances here it would arguably have been Jokerst who waived it by orally agreeing to the work. *See KC Excavating,* 141 S.W.3d at 407.

8. Jokerst had filed a counter-petition at trial against the City, arguing that in the event Jokerst was found liable in quantum meruit,

the City should indemnify Jokerst as the City retained the benefit of the stand-up curb. The City filed a motion to dismiss, raising various arguments and attaching an affidavit Jokerst signed in August of 2010 affirming that all claims for payment from the City had been paid in full. The trial court granted the City's motion to dismiss Jokerst's counter-petition.

*Lyman v. Walls,* 660 S.W.2d 759, 761 (Mo. App. E.D.1983).

Finally, Jokerst argues that Kluesner's claim was defeated by accord and satisfaction, because Kluesner accepted the last check Jokerst sent as final payment for all work. We disagree.

"An accord is an agreement for the settlement of a previously existing claim by a substituted performance. Satisfaction is the performance of the agreement." *Hiblovic v. Cinco–T.C. Inc.,* 40 S.W.3d 921, 923 (Mo.App. E.D.2001). This affirmative defense requires both components, accord and satisfaction. *Id.* Accord and satisfaction is a contract in itself, which must also be the result of a meeting of the minds. *Majestic Bldg. Material Corp. v. Gateway Plumbing, Inc.,* 694 S.W.2d 762, 764 (Mo.App. E.D.1985). No accord and satisfaction exists "unless payment is tendered on the *express* condition that it be accepted in full satisfaction of the claim," a condition which "must be made clearly apparent to the creditor." *Cranor v. Jones Co.,* 921 S.W.2d 76, 81 (Mo.App. E.D.1996) (citing *Henderson v. Eagle Express Co.,* 483 S.W.2d 767, 768 (Mo.App.1972)).

The check Jokerst sent to Kluesner did not contain any designation that it was being tendered in settlement of Kluesner's claim for payment of the stand-up curb. The accompanying document listed the check amount as "Final Check Amount Paid." There was no express communication of the condition that the check be accepted as full satisfaction of Kluesner's claim for payment for the stand-up curb, nor is there evidence of a prior agreement between Jokerst and Kluesner that this amount would settle their dispute regarding payment for the stand-up curb. Thus, Kluesner's acceptance of Jokerst's check did not constitute accord and satisfaction of Kluesner's claim for payment for the stand-up curb.

In conclusion, there was substantial evidence from which the trial court could find Kluesner proved the elements of quantum meruit. The amount of damages the trial court awarded was the amount outstanding for the stand-up curb listed on Kluesner's invoices after other undisputed adjustments, and there was substantial evidence from which the trial court could find this a reasonable amount. Kluesner's acceptance of the last check Jokerst sent was not an accord and satisfaction of Kluesner's claim. Point denied.

### Point III

Jokerst argues that the trial court's judgment is inconsistent and ambiguous in that it purports to grant Kluesner relief under both Kluesner's breach of contract theory and quantum meruit. As we have determined Kluesner was only entitled to recover in quantum meruit, and we affirm only the trial court's judgment related to Kluesner's quantum meruit claim, this point needs no further discussion. Point denied as moot.

### Point IV

Jokerst argues that the trial court erred in granting Kluesner prejudgment interest because the amount of Kluesner's claim was in dispute, undetermined, and unliquidated. We disagree.

A trial court is authorized to include prejudgment interest in an award of damages where the amount due was liquidated and demand of payment was made. Section 408.020, RSMo. (Supp. 2012). The fact that an action is in quantum meruit does not render a claim unliquidated. *Gen. Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 909 (Mo.App. E.D. 1984). "If the defendant is liable for the reasonable value of services[,] he is under

a legal duty to liquidate the sum due and interest should be allowed from the time he should have paid." *Id.* (quoting *Mid–West Eng'g & Constr. Co. v. Campagna*, 421 S.W.2d 229, 234 (Mo.1967)).

Jokerst relies on a case in which this Court denied prejudgment interest because the parties had a bona fide dispute over the proper standard to be applied in measuring damages. *See St. John's Bank & Trust Co. v. Intag, Inc.*, 938 S.W.2d 627, 630 (Mo.App. E.D.1997). Unlike the dispute over the measure of damages in *St. John's*, here, Jokerst disputes liability under Kluesner's quantum meruit theory. Denial of liability is present in nearly every lawsuit and does not remove the fact that the amount of damages was readily ascertainable and should have been liquidated. *Lucent Techs., Inc. v. Mid–West Elecs., Inc.*, 49 S.W.3d 236, 246–47 (Mo. App. W.D.2001).

Kluesner's invoice provided Jokerst with a value for the stand-up curb. Jokerst had the ability to determine the fair market value of a stand-up curb in order to liquidate damages at the time Kluesner demanded payment. The trial court made no error of law in awarding prejudgment interest, and the amount awarded is supported by substantial evidence. Point denied.

### Conclusion

The trial court erroneously declared and applied the law in concluding Jokerst's use of Kluesner's bid and subsequent award of the Cape Project created a contract based on the terms contained in Kluesner's bid. We reverse this portion of the trial court's judgment. However, the trial court's judgment contains findings supported by substantial evidence that Kluesner was entitled to recover on its quantum meruit claim. The damages awarded by the trial court are supported by substantial evidence and reflect the reasonable value of the services Kluesner provided. The trial court did not erroneously apply the law in awarding prejudgment interest. We affirm the trial court's judgment in favor of Kluesner on its quantum meruit claim, and we affirm the trial court's award of damages and prejudgment interest.

REVERSED IN PART; AFFIRMED IN PART AND IN RESULT.

ROY L. RICHTER and ROBERT M. CLAYTON III, JJ., concur.