

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| DR. JOHN B. WELTMER, JR., | ) | ED99948 |
| | ) | ED99553 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| SIGNATURE HEALTH SERVICES INC. | ) | Honorable Gloria C. Reno |
| f/k/a PREMIER CARE, INC., ST. LOUIS | ) | |
| COUNTY ORTHOPEDIC GROUP INC., | ) | |
| SLCOG PROPERTY MANAGEMENT & | ) | |
| LEASING COMPANY, LLC, and | ) | |
| PREMIER CARE LEASING, LLC | ) | |
| | ) | |
| Respondents. | ) | Filed: January 21, 2014 |

### Introduction

Dr. John B. Weltmer, Jr. (Weltmer) appeals the trial court's grant of summary judgment in favor of Signature Health Services Inc., f/k/a Premier Care, Inc., St. Louis County Orthopedic Group Inc. (SLCOG), and SLCOG Property Management & Leasing Company, (SLCOG Property), LLC and Premier Care Leasing, LLC (collectively, Signature). On appeal, Weltmer argues the trial court erred in granting summary judgment because there were genuine issues of disputed material fact and there was no accord and satisfaction, erred in granting Signature's motion for attorney fees, and erred

in denying Weltmer's motion for additional time to conduct discovery. We reverse in part and remand.

## Background and Procedure

Weltmer was both a shareholder and employee of Signature, working at the South Division office. He entered into an Employment Agreement for Shareholder Physician (the Employment Agreement) and a Shareholder Agreement/Stock Purchase and Transfer Restriction Agreement (the Shareholder Agreement) in 2001. Pursuant to the Employment Agreement, Weltmer could be terminated for cause by an affirmative vote of at least two-thirds of the members of the Signature board of directors. Weltmer was terminated for cause on August 5, 2009. Following Weltmer's termination, Signature issued Weltmer two checks for $21,850.00 and $146,884.80, representing its calculation of the value of Weltmer's equity interest in Signature. Weltmer signed and deposited both checks, writing "partial buy out" on the backs of both checks.

Weltmer filed suit against Signature. In his second amended petition, Weltmer claimed, as relevant to this appeal, breach of the Employment Agreement, asserting that he was not terminated for cause and the board of directors did not vote on whether to terminate his employment; and breach of the Shareholder Agreement, asserting that Signature's liquidation of Weltmer's equity interests was not done in accordance with generally accepted accounting principles and violated the Shareholder Agreement.

Signature moved for summary judgment, arguing it was entitled to judgment as a matter of law because Signature did not breach the Employment Agreement in Weltmer's termination, Weltmer's act of cashing the checks constituted an accord and satisfaction of

2

his claims, and Signature properly calculated Weltmer's equity interests. Signature asserted through exhibits and affidavits that at the time of Weltmer's termination, there were seven members on Signature's board of directors. At a special meeting in July of 2009, all seven members voted to terminate Weltmer for cause. The written resolution set forth the reasons for Weltmer's termination as "including but not limited to":

i. making false allegations to his peers and the general public of the alleged occurrence of financial and tax improprieties of [Signature]; and

ii. making false allegations of the misuse of profits and distribution in an ambulatory surgery center owned in part by [Weltmer] … ; and

iii. using a credit card, personally guaranteed by another physician in [Weltmer]'s division, for personal use without the ability or intent to repay; and

iv. using a [Signature] issued credit card for personal use without the ability or intent to repay; and

v. communicating with [Signature] employees in an unprofessional and derogatory manner.

Martin Zaegel (Zaegel), Signature's Chief Financial Officer and a certified public accountant, attested that he calculated Weltmer's equity interests in Signature as follows. Weltmer's Signature stock was valued at $2,000.00 for purposes of liquidation. Weltmer's interest in the SLCOG was $142,252.00, calculated using 2008 tax documents as: the total assets ($3,464,471.00), less liabilities ($914,040.00), less the book value of the building ($558,898.00), divided by the number of owners (14). Zaegel subtracted from Weltmer's total interest in SLCOG $18,769.20 for personal expenses Weltmer had charged to Signature's credits cards but not repaid, for a total equity interest in SLCOG of $125,482.80 ($142,252.00, plus $2,000.00, less $18,769.80). From Weltmer's total equity interest in SLCOG, Zaegel subtracted $250,000.00 for the amount Weltmer had

3

received in advances from Signature but had not repaid. Applying this debt, the balance Weltmer owed Signature was $124,517.20.

Next, Zaegel valued Weltmer's interest in SLCOG Property at $271,402.00, calculated using 2008 tax documents as: total assets ($6,178,960.00), less liabilities ($1,760,092.00), divided by the number of owners (14). Zaegel subtracted the amount Weltmer owed Signature from his interest in SLCOG Property, for a total equity interest in SLCOG Property of $146,884.80. Last, Zaegel valued Weltmer's interest in Premier at $21,850.00, calculated using 2008 tax documents as: total assets ($3,046,625.00), less liabilities ($2,703,696.00), divided by the number of owners (16).

Accordingly, Zaegel issued Weltmer two checks for his equity interests in Signature, SLCOG, SLCOG Property, and Premier: one check in the amount of $21,850.00 and one check in the amount of $146,884.80. The checks were offered with the following statement:

> [Weltmer's] equity interests in Signature, SLCOG, [Premier] and SLCOG Property have been terminated effective today pursuant to the various shareholder/operating agreements. His interests in such entities have been valued in accordance with the applicable agreements. The redemption proceeds payable to Dr. Weltmer from these entities, reduced by setoff of amounts due and payable to Dr. Weltmer effective today, result in a net balance due to Dr. Weltmer of $168,734.80. Checks payable to Dr. Weltmer in that amount are enclosed herewith.

Weltmer signed and cashed the checks, writing "partial buy out" on the backs of both checks. Signature claimed that by cashing the checks Weltmer accepted the proffered amount as a full and final settlement of his equity interests in Signature, and that, moreover, Weltmer admitted in his deposition he did not know whether Zaegel's calculations were incorrect.

In response to Signature's motion for summary judgment, Weltmer asserted there were more than seven members on the board of directors, attaching Signature's 2009 Annual Registration Report filed with the Missouri Secretary of State, which named 59 directors. Thus, he claimed the seven members who voted were substantially less than two-thirds of all the board of directors. Moreover, he asserted that in an October 2009 (two months after the vote to terminate him) conversation with Katherine Burns, president of Signature in 2009 and a member of Signature's board of directors, she did not know he had been terminated. In addition, Weltmer denied the allegations upon which his termination for cause was based, and argued the written resolution setting forth the reasons for his termination was unauthenticated hearsay. While Weltmer agreed that his wife had charged approximately $17,000 on the company credit card, he asserted everyone used the company credit cards and paid off the charges through bonuses. Weltmer attached deposition testimony in which he asserted his intention to repay the charges.

As for the amount of his liquidated equity interest in Signature, Weltmer argued he had received no cost basis for the amounts Signature sent him and thus could not determine whether the amounts were accurate. He attached a portion of his deposition, his response to interrogatories, and an affidavit from his wife, Peggy Weltmer, in which he calculated what he believed Signature owed him, based on information he and his wife had received from Zaegel in 2008. According to Weltmer's calculations, Signature owned him at least $1,058,166.34 for his liquidated equity interest in Signature.

As for whether he had repaid the $250,000.00 advance, Weltmer attached an affidavit of Becky Kissel (Kissel), a certified public accountant who handled his taxes, in

5

which she attested that her review of Weltmer's W-2 forms from Signature showed his income was significantly higher than the amounts he received, indicating that Signature had held back a portion of Weltmer's income, such as for the repayment of a loan or advance. And yet, Weltmer also attached a portion of his deposition in which he agreed he owed Signature $250,000.00. Weltmer agreed he endorsed and cashed the two liquidation checks he received from Signature. He also agreed that although he wrote "partial buy out" on the back, he was not told by Signature that the checks were a partial buy out. He argued, however, that his cashing the checks did not constitute an accord and satisfaction, because Signature failed to show any express provision indicating that acceptance of payment was a full and final settlement of his claims.

After Signature filed its motion for summary judgment, Weltmer filed a motion for additional time to conduct discovery. After a hearing, the trial court granted him fifteen days to supplement his motion. He did so with an affidavit from his attorney, Nelson Mitten (Mitten), attesting Signature had "not produced any financial records," despite assurances that it would. Mitten further attested he needed to depose Zaegel on the basis for the $2,000.00 stock valuation, the basis for his determination of the "book value" of a building of $558,898.00, whether there were any other assets or liabilities for Premier, and whether any of the $250,000.00 advance had been repaid. Mitten noted Zaegel had not initially been identified by Signature as an expert witness.[1] Mitten attested he had requested depositions for the signatory board of directors to determine the cause for Weltmer's termination, but Signature filed a motion for a protective order

---

[1] Mitten attached Signature's answer to Weltmer's interrogatory requesting the names of any expert witnesses, retained and non-retained, that Signature expected to testify at trial, in which it stated "it ha[d] not determined whether it intend[ed] to call any expert witness at trial" but reserved the right to supplement its response at a later date.

6

preventing the depositions. The record does not show that the trial court ruled on Weltmer's motion for additional time to conduct discovery.

After a hearing on the motion for summary judgment, the trial court ordered the parties "to provide evidence as to the actual board members as of the time of the board vote regarding Doctor Weltmer's termination." Signature submitted an affidavit of Andrew Schwartzkopt (Schwartzkopt), general counsel for Signature, with attached exhibits attesting to the following. The Ninth Amended and Restated Bylaws of Signature Health Services, Inc. (Bylaws), which were in effect July of 2009, provide that the board of directors shall be comprised of up to fifteen members, consisting of one shareholder for every ten employed physicians in the orthopedic and OB/GYN departments, one CEO, and up to two community members. In 2008, Signature shareholders elected six members to the board of directors. At the time of the 2008 elections, there were 40 orthopedic physicians and 27 OB/GYN physicians. These six elected board members plus CEO Jan Vest (Vest) held a special meeting and voted to terminate Weltmer for cause, as was reflected in the written resolution signed by all seven members of Signature's board of directors. Schwartzkopt attested the written resolution from the special board meeting was a business record maintained in the normal course of business, and that he was familiar with and recognized each of the seven board members' signatures.

In his memorandum to the trial court, Weltmer repeated his argument that the Missouri Secretary of State's website listed 59 directors. He recognized but dismissed the contrary language of the Bylaws and Vest's deposition in which he specifically testified that all of Signature's physicians were listed as directors on the Missouri

7

Secretary of State website to comply with workers' compensation rules and "[n]ot [because] they [were] on the Board of Directors."

The trial court granted summary judgment to Signature in a "Final Order and Judgment" on December 13, 2012. Weltmer timely appealed. On January 16, 2013, Signature moved for attorney fees, asserting it had incurred attorney fees and expenses in the amount of $129,945.03.[2] Signature further argued that it was the prevailing party and thus, pursuant to the Employment Agreement between Signature and Weltmer, was entitled to recover its attorney fees, costs, and expenses incurred in defending against claims of breach of the Employment Agreement. Weltmer argued that Signature's motion was out of time, having been filed more than 30 days after the final order and judgment. The trial court entered final judgment pursuant to Rule 74.01 and awarded Signature $128,743.03 in fees, costs, and expenses. This appeal follows.[3]

## Discussion

### Standard of Review

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The movant has the burden to establish both a legal right to judgment and the absence of any genuine issue of material fact supporting that claimed right to judgment. Id. at 378. A defending party may establish a right to summary judgment as a matter of law by showing: (1) facts that negate any one of the elements of claimant's cause of action; (2) the non-movant, after an adequate discovery period, has

---

[2] This amount of fees and expenses includes Signature's later motion to amend by interlineation.
[3] Weltmer's two appeals were consolidated by order of this Court.

not and will not be able to produce evidence sufficient to allow the trier of fact to prove the elements of its claims; and (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's affirmative defense. Meramec Valley R-III Sch. Dist. v. City of Eureka, 281 S.W.3d 827, 835 (Mo. App. E.D. 2009).

Our review is essentially de novo. Cardinal Partners, L.L.C. v. Desco Inv. Co., 301 S.W.3d 104, 108 (Mo. App. E.D. 2010). When considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record. Id. at 108-09. In opposing summary judgment, the non-moving party may not rely on mere allegations and denials, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. Meramec Valley R-III Sch. Dist., 281 S.W.3d at 835.

## Point I

In his first point on appeal, Weltmer argues the trial court erred in granting summary judgment in favor of Signature because the court erred in considering the written resolution from the special meeting, which was unauthenticated hearsay[4]; and there remained a genuine issue of material fact as to how many members there were on Signature's board of directors and whether there was a factual basis to terminate Weltmer for cause. Weltmer's arguments are unavailing.

First, the written resolution was not unauthenticated hearsay and the trial court properly considered it. "Only evidence that is admissible at trial can be used to sustain or avoid summary judgment." United Petroleum Serv., Inc. v. Piatchek, 218 S.W.3d 477,

---

[4] We note that Weltmer termed this claim as a genuine issue of material fact; however, it is a legal question and we consider it as such.

9

481 (Mo. App. E.D. 2007). To be admissible as evidence, a document must meet a number of foundational requirements, including relevancy, authentication, the best evidence rule, and hearsay. Bank of Am., N.A. v. Reynolds, 348 S.W.3d 858, 861 (Mo. App. W.D. 2011). However, business records are an exception to the hearsay rule and are admissible at trial "if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near time of the ... event, and if, in opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Section 490.680, RSMo. (2000). When a document meets these statutory requirements, it receives a "presumptive verity, and so excepts [it] from the hearsay rule." Davolt v. Highland, 119 S.W.3d 118, 134 (Mo. App. W.D. 2003) (citation omitted). The trial court has discretion to determine whether a sufficient foundation was laid for the admission of evidence, including business records, and this Court will not reverse absent a showing the trial court abused its discretion. Asset Acceptance v. Lodge, 325 S.W.3d 525, 528 (Mo. App. E.D. 2010).

Here, Signature attached the written resolution setting forth the reasons for Weltmer's termination signed by seven members of Signature's board of directors as an exhibit to its motion for summary judgment. In response to hearsay challenges from Weltmer, Signature produced deposition testimony from Vest attesting that he assisted in preparing the written resolution through review and discussion with the other board members and Signature's general counsel, that he witnessed several board members sign the written resolution, and that Signature's general counsel discussed the document with the board of directors both before and after it was drafted. Likewise, Schwartzkopt

attested via affidavit that the written resolution from the special board meeting was a business record maintained in the normal course of business, and that he was familiar with and recognized each of the seven board members' signatures. Moreover, the written resolution itself states it was executed on July 1, 2009, the date of the meeting, and the facsimile stamps included therein show it was signed by the board members between July 1 and 7. These exhibits were sufficient to authenticate the written resolution as a business record by establishing its identity and showing how the document was prepared and how it was kept. Section 490.680; see also Payne v. Cornhusker Motor Lines, Inc., 177 S.W.3d 820, 839-40 (Mo. App. E.D. 2005) (requisite foundation for admission of business record can be established by testimony or affidavit from qualified witness). Weltmer failed to show the trial court abused its discretion in considering the written resolution.

Second, there is not a genuine dispute of material fact as to the number of members of Signature's board of directors. In reviewing the trial court's grant of summary judgment, we apply the same criteria to determine whether summary judgment was proper. Goerlitz v. City of Maryville, 333 S.W.3d 450, 452 (Mo. banc 2011). Namely, the party seeking summary judgment bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact. ITT Commercial Fin. Corp., 854 S.W.2d at 378. We accept the facts contained in affidavits or otherwise supporting the motion for summary judgment as true unless contradicted by the non-moving party's response to the summary judgment motion. Id.

Here, Signature produced its Bylaws, which specifically provided that the board of directors shall be comprised of *up to* fifteen members. Moreover, the Bylaws' rules

11

allowed the election of one member of the board of directors for every ten employed physicians in the orthopedic and OB/GYN departments. Signature included exhibits and affidavits showing that at the time of the relevant election, there were 40 orthopedic physicians and 27 OB/GYN physicians. Thus, membership of the board of directors was limited by the Bylaws to up to, but no more than, six physician members, plus the CEO, and up to two community members. CEO Vest and general counsel Schwartzkopt both attested that the board of directors was comprised of seven members, all of whom signed the written resolution voting to terminate Weltmer for cause.

Weltmer's evidence that the Missouri Secretary of State website listed 59 "directors" was not sufficient to create a genuine issue of material fact. A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. Grissom v. First Nat. Ins. Agency, 364 S.W.3d 728, 732 (Mo. App. S.D. 2012). The dispute must be real and not merely argumentative, imaginary, or frivolous. Hargis v. JLB Corp., 357 S.W.3d 574, 577 (Mo. banc 2011). Weltmer's argument that deeming 59 physicians as "directors" for purposes of the Missouri Secretary of State's report made them into the "board of directors," is merely argumentative and does not create a genuine dispute. Only genuine disputes of material fact will preclude summary judgment. Goerlitz, 333 S.W.3d at 453.

Third, Weltmer asserts Signature failed to set forth any facts that would have given Signature a basis to terminate him for cause, again arguing that the written resolution was unauthenticated hearsay and hearsay within hearsay. As stated above, the written resolution was properly considered by the trial court as a business record. Moreover, in addition to the written resolution, Signature provided the trial court with

deposition testimony from Vest that Weltmer was terminated for cause for the reasons set forth in the written resolution. Although Weltmer denied some of grounds for his termination for cause (specifically that he intended to repay the charges made on Signature's credit cards), he did not deny all of them. Our review of the record does not show that Weltmer denied making allegations to his peers and the general public of financial and tax improprieties at Signature, making allegations of the misuse of profits and distributions by Signature, or communicating with Signature employees in an unprofessional and derogatory manner. Any one of these grounds could support his termination for cause. By not denying grounds that could have supported his termination for cause, Weltmer failed to create a genuine issue of disputed material fact.

The trial court did not err in granting Signature's motion for summary judgment, because the court properly considered the written resolution from the special board meeting, there was no genuine issue of material fact as to either how many members there were on the board of directors or whether there was a factual basis to terminate Weltmer for cause.

Point denied.

## Point II

In his second point on appeal, Weltmer argues the trial court erred in granting summary judgment to Signature, because, first, there was no accord and satisfaction; second, the trial court should not have considered Zaegel's affidavit; and, third, there remained a genuine issue of fact with respect to the liquidated amount of Weltmer's equity interest in Signature. We agree that there was no accord and satisfaction and that there existed a genuine issue of material disputed fact precluding summary judgment.

"An accord is an agreement for the settlement of a previously existing claim by a substituted performance. Satisfaction is the performance of the agreement." City of Cape Girardeau ex rel. Kluesner Concreters v. Jokerst, Inc., 402 S.W.3d 115, 124 (Mo. App. E.D. 2013) (citation omitted). An accord and satisfaction is an affirmative defense, and requires the existence of both components. Id. An accord and satisfaction is itself a contract, which requires a meeting of the minds. Id. An accord and satisfaction will not exist unless payment is tendered on the express condition—clearly apparent to the creditor—that it be accepted in full satisfaction of the claim. Id.

Here, the checks Signature sent to Weltmer were accompanied by a letter stating that Weltmer's equity interests in Signature, SLCOG, Premier, and SLCOG Property had been valued in accordance with the applicable agreements between the parties, reduced by the amounts owed to Signature by Weltmer, resulting "in a net balance due to Dr. Weltmer of $168,734.80." The language of this letter was insufficient to create a contract for an accord and satisfaction, because there was no *express communication* that the payment was intended as satisfaction in full. Compare Clark v. Traders Ins. Co., 951 S.W.2d 750, 752-53 (Mo. App. W.D. 1997) (drafts labeled "in full settlement of the personal property coverage," "in full settlement of loss of use coverage," and "in full and final settlement of dwelling fire" were sufficient to establish accord and satisfaction of disputed amount, because checks were tendered on express condition that acceptance thereof shall be seemed satisfaction in full); McKee Const. Co. v. Stanley Plumbing & Heating Co., 828 S.W.2d 700, 701, 706 (Mo. App. S.D. 1992) (accord and satisfaction resulted when letter accompanying check stated "[a]cceptance and negotiation of this check will be considered a full and final release of any claims").

14

The letter here did not say the check was "in full settlement" of Weltmer's claims, nor that acceptance of the check would be considered a full and final release of any claims; rather, the letter appeared to be an expression of Signature's position in the dispute over the amount owed to Weltmer. Thus, Weltmer's acceptance of Signature's checks did not constitute an accord and satisfaction of his claim.

Without an accord and satisfaction, we turn to the question of whether a genuine issue of material fact remains regarding the amount of Weltmer's liquidated equity interest in Signature. Among Weltmer's several assertions of disputed fact, he claimed Zaegel's affidavit was not sufficient to establish the alleged value of the Signature stock at $2,000.00, the reported book value of SLCOG's building, or Signature's allegation that Weltmer owed $250,000.00. Viewing the evidence in a light most favorable to Weltmer, there is a genuine issue of material fact regarding the basis for Signature's stock valuation and the reported book value of SLCOG's building.[5]

As the party seeking summary judgment, Signature bore the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact. ITT Commercial Fin. Corp., 854 S.W.2d at 378. Rule 74.04 provides that a motion for summary judgment must be accompanied by a statement of uncontroverted material facts supported by specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts. Rule 74.04(c)(1). Affidavits in support of summary judgment must be based on personal knowledge, must set forth facts that would be admissible as evidence, and must show affirmatively that the

---

[5] In light of our decision to reverse summary judgment after finding there was a genuine issue of material fact as to the amount of Weltmer's liquidated equity interest in Signature, we decline to also address Weltmer's specific allegation that there was a genuine issue of material fact regarding whether he had in fact repaid part of the $250,000.00 advanced to him by Signature.

15

affiant is competent to testify to the matters stated therein. Rule 74.04(e); Strable v. Union Pac. R.R. Co., 396 S.W.3d 417, 425 (Mo. App. E.D. 2013). Signature here supported its statement of uncontroverted material facts with an affidavit from Zaegel setting forth how he calculated Weltmer's equity interest; however, the exhibits accompanying the affidavit did not demonstrate how he reached the claimed stock value and the claimed book value for SLCOG's building.

We note that conclusory statements in a supporting affidavit do not necessarily defeat a motion for summary judgment if the remaining portions of the affidavits and pleadings provide a basis for judgment as a matter of law. Scott v. Ranch Roy-L, Inc., 182 S.W.3d 627, 635-36 (Mo. App. E.D. 2005). Nevertheless, here, our review of the record produced no evidence upon which the trial court could have found the stock was valued at $2,000.00 and the building's book value was $558,898.00, without which the trial court could not have properly determined Signature was entitled to judgment. See Sakabu v. Regency Const. Co., Inc., 392 S.W.3d 494, 499-500 (Mo. App. E.D. 2012). Thus, Signature has not met its burden, and the trial court erred in granting summary judgment in favor of Signature.

Weltmer's deposition statements that he did not know whether Zaegel's calculations were incorrect was not sufficient to waive the deficiencies in Signature's motion for summary judgment. See Jordan v. Peet, 409 S.W.3d 553, 558 (Mo. App. W.D. 2013) (even if non-movant fails to properly respond to motion for summary judgment, motion may still be denied if movant's factual assertions are not sufficient to entitle movant to judgment as matter of law). Moreover, the record shows that Weltmer challenged Zaegel's stock valuation of $2,000.00 and Zaegel's determination of the

$558,898.00 book value of SLCOG's building, and he requested the basis for both but did not receive an explanation. We decline to punish Weltmer for not having information to which he was not given access.

As for Weltmer's remaining allegations that the trial court erred in considering Zaegel's affidavit, we find them unavailing.

Point granted in part.

## Point III

In his third point on appeal, Weltmer argues the trial court erred in granting Signature's motion for attorney fees, because (1) summary judgment was improper, (2) the motion was untimely filed and thus the trial court lacked jurisdiction to enter the order, and (3) the fees requested were excessive and duplicative. Regardless of whether the motion for attorney fees was timely filed, because we have reversed the trial court's grant of summary judgment, the trial court's award of attorney fees must also be reversed at this time.

Point granted.

## Point IV

In his fourth and final point on appeal, Weltmer argues the trial court erred in denying his motion for additional time to conduct discovery. Weltmer's argument is not properly before us and we decline review.

Although Weltmer argues and Signature agrees that the trial court denied Weltmer's motion for additional time to conduct discovery, neither party cites to the court's dismissal in the record, and our review of the record does not show that the trial court actually ruled on the motion. It is Weltmer's burden on appeal to provide this

Court with a legal file that "contain[s] all of the record, proceedings and evidence necessary to the determination of all questions to be presented ... to the appellate court for decision." Rule 81.12(a). Specifically, the legal file must include "the judgment or order appealed from." Rule 81.12(a). Weltmer has not complied with Rule 81.12(a). Absent the required record, this court cannot review Weltmer's fourth point on appeal.

Point denied.

## Conclusion

The judgment of the trial court is reversed in part and affirmed in part. The trial court properly granted summary judgment on the issue of whether Weltmer's termination breached the Employment agreement. However, there remain genuine issues of material fact as to whether Signature properly liquidated Weltmer's equity interests. We remand for the trial court to determine the proper amount of his liquidated equity interest in accordance with this opinion.

Lisa S. Van Amburg, P.J., concurs.
Patricia L. Cohen, J., concurs.

Gary M. Gaertner, Jr., Judge