In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

MICHAUD MITIGATION, INC. D/B/A ) No. ED108868
PUROCLEAN RESTORATION )
PROFESSIONALS, )
 ) Appeal from the Circuit Court
 Respondent, ) of Jefferson County
 )
vs. )
 ) Honorable Joseph A. Rathert
RAY M. BECKETT, )
 )
 Appellant. ) FILED: April 6, 2021

 Introduction

 Ray M. Beckett (“Beckett”) appeals from the judgment of the trial court following a

bench trial awarding Michaud Mitigation, Inc. (“Michaud Mitigation”) $51,189.75 in contractual

damages arising out of flooding mitigation work performed by Michaud Mitigation on Beckett’s

property. Beckett raises two points on appeal. In Point One, Beckett argues the trial court erred

in finding a contract existed between himself and Michaud Mitigation because the purported

contract did not contain a price term or a method for determining the price. In Point Two,

Beckett contends the trial court abused its discretion in accepting a software-generated invoice

into evidence because it was not supported by a proper foundation due to the uncertainties in

how the software calculated the charged price. Because the contract executed by Michaud

Mitigation falls within a recognized exception allowing the enforcement of a contract despite the

absence of a price term, we deny Point One. Because the record contains sufficiently detailed
evidence as to how the software-generated invoice was created, the trial court did not abuse its

discretion when admitting the invoice into evidence, and we deny Point Two. Accordingly, we

affirm the judgment of the trial court.

 Factual and Procedural History

 In July 2015, Beckett contacted Michaud Mitigation after his home sustained flood

damage approximately two weeks prior. David Michaud walked the property with Beckett and

surveyed the damage, which he observed to be severe. Specifically, David Michaud observed

that Beckett’s shed had flooded, that the water line stood approximately three-and-a-half feet

high outside of the shed, that the home’s basement had several feet of standing water, that the

carpet was saturated with water, that the moisture content of the drywall was at 100 percent, and

that there was severe mold growth on the home’s main floor’s walls, furniture, and flooring. The

flooding was so severe that David Michaud determined that even the second story of Beckett’s

home was damaged. David Michaud explained to Beckett that he could not know what all

needed to be done until he began working on the project. Beckett signed a service authorization

form permitting Michaud Mitigation to begin remediating the damage to the property.

 David Michaud made a sketch of the property and took notes on a daily basis for the

purpose of invoicing Beckett. David Michaud also took extensive photos of the property and the

work performed. Following completion of the work on the property, David Michaud used the

software Xactimate to generate an invoice for Beckett. David Michaud entered the sketch and

the days various pieces of equipment were used into Xactimate. The fees were calculated based

upon this information. Xactimate suggested that Michaud Mitigation charge Beckett $51,189.75

for the work (the “Xactimate Invoice”).

 David Michaud filed claims for breach of contract, unjust enrichment, and quantum

meruit against Beckett after Beckett did not pay him the requested $51,189.75. Michaud
 2
Mitigation was subsequently substituted as the proper plaintiff. In his answer, Beckett admitted

that he had not paid Michaud Mitigation anything for the work performed. Beckett raised the

defense that there was no valid contract between him and Michaud Mitigation because the

purported contract lacked a required price term.

 The case proceeded to a bench trial. David Michaud testified extensively about the

damage done to Beckett’s property and the extensive work required to remediate the damage.

Michaud Mitigation sought to have the Xactimate Invoice entered into evidence. Beckett

objected to a lack of foundation, contending there was no evidence as to “how [Xactimate] runs,

what’s the basis of it, what’s its algorithm look like, or any of the other functions that go into

spitting out this invoice.” The trial court overruled the objection and admitted the Xactimate

Invoice, but expressly noted that it was not necessarily accepting the charges in the Xactimate

Invoice as fair and reasonable. David Michaud testified that he used Xactimate for all of his

customers, that he had used it as long as he had been in the mitigation industry, that its use is

directed by the industry, and that it is a unified billing platform used by both the insurance and

mitigation industries. David Michaud believed that $51,189.75 was a fair and reasonable charge

for the work done. On cross-examination, David Michaud testified that he did not create

Xactimate, understand its code, or understand how it was created.

 Beckett testified that he believed $51,189.75 was not a reasonable charge for the work

done. When asked to provide an amount that he believed to be reasonable for services

performed, Beckett offered no evidence.

 3
 The court found that an enforceable contract existed between the parties and awarded

Michaud Mitigation the $51,189.75 sought under the contract as well as $16,551.90 in attorneys’

fees. Beckett now appeals.1

 Points on Appeal

 In Point One, Beckett argues the trial court erred in finding a contract between himself

and Michaud Mitigation because the purported contract did not contain a price term or a method

for determining the price. In Point Two, Beckett contends the trial court abused its discretion in

accepting the Xactimate Invoice into evidence because it was not supported by a proper

foundation due to the uncertainties in how the price estimate it contained was calculated.

 Discussion

I. Point One—The Contract Was Valid Despite the Absence of a Price Term

 Beckett challenges the existence of a valid contract between himself and Michaud

Mitigation because the agreement lacked the required price term and did not fall into the

exceptions allowing for a valid contract despite the absence of a price term.

 A. Standard of Review

 In court-tried cases, we will affirm the judgment of the trial court “unless there is no

substantial evidence to support it, unless it is against the weight of the evidence, unless it

erroneously declares the law, or unless it erroneously applies the law.” Murphy v. Carron, 536

S.W.2d 30, 32 (Mo. banc 1976); see also Rule 84.13(d)(1).2 Whether an enforceable contract

exists is a question of law that we review de novo. See May v. Williams, 531 S.W.3d 576, 582–

83 (Mo. App. W.D. 2017) (internal citations omitted) (reviewing de novo an appellant’s

1
 On March 1, 2021, we took this appeal under submission. Subsequently, Michaud Mitigation moved for leave to
file and for attorneys’ fees on appeal. Because our Local Rule 400 requires that such motions for attorneys’ fees be
made before the cause is taken under submission, we deny the motions.
2
 All Rule references are to Mo. R. Civ. P. (2020).

 4
argument that no enforceable contract existed between the parties due to the absence of a price

term).

 B. Analysis

 Both parties acknowledge the precedent established in Allied Disposal, Inc. v. Bob's

Home Serv., Inc., 595 S.W.2d 417 (Mo. App. E.D. 1980). Allied recognized “the general rule

that an agreement must fix a price or provide a method to ascertain the price in order to form an

enforceable contract,” but nevertheless found an enforceable contract existed between the parties

where the parties had agreed upon a price to be determined at a future time. Id. at 419, 421.

Beckett contends that while Allied allowed the parties to create a valid and binding contract even

though they expressly agreed to later determine the price, that exception applies only in a narrow

set of cases, such as exclusive sale and distribution agreements and contracts for the sale of

goods under the Uniform Commercial Code. Conversely, Michaud Mitigation posits that Allied

obviated the strict necessity for price terms in contracts and provided that courts may consider

the particular facts and circumstances at issue in determining whether a contract without a price

term is enforceable. We agree with Michaud Mitigation’s characterization of Allied, and we

hold an enforceable contract existed in the present case. Indeed, holding otherwise would

severely undermine the reasonable and common practice in home repairs where the contractor is

able to calculate the amount owed for the services performed only after sufficient work has been

completed from which the contractor is able to calculate its own expenses from the project.

 In Allied, the trial court dismissed all counts in a breach of contract action, apparently

finding no contract existed between the parties because the purported contract did not contain a

price term, but contained a term providing only that “[t]he price . . . shall be mutually agreed

upon[.]” Id. at 418–19. On appeal, we recognized “the general rule that an agreement must fix a

price or provide a method to ascertain the price in order to form an enforceable contract.” Id. at
 5
419 (citing Barling v. Horn, 296 S.W.2d 94 (Mo. 1956)). However, we also recognized the

exception that there exists an implied standard of reasonableness when the purported contract has

no price term but has been executed. Id. (internal citation omitted). Additionally, we concluded

that the Missouri legislature had made statutory changes that “reflect[ed] a legislative policy of

the state to obviate the prior doctrine invalidating contracts where the price was left to further

agreement.” Id. at 421 (citing Sections 400.2-204, 400.2-3053). Instructive for our analysis of

this case, we approvingly cited cases finding contracts enforceable despite the absence of a price

term where an appropriate price would be difficult or impossible to determine before

performance of the contract. Id. at 420 (citing United States v. Swift & Co., 270 U.S. 124

(1926); Mantell v. Int'l Plastic Harmonica Corp., 55 A.2d 250 (N.J. 1947)). Ultimately, we

concluded that the absence of a price term, even absent execution by one party, “does not

preclude, in and of itself, the validity of a contract.” Id. at 421. Based on the fact that

“establishing a price in advance . . . was difficult or impossible,” we held that the contract at

issue in Allied was enforceable even without a set price term. Id.

 Here, we first note that the contract was fully executed by Michaud Mitigation. We note

also that, on appeal, Beckett does not dispute the reasonableness of the price sought by Michaud

Mitigation. Thus, even if Beckett’s more constrained reading of Allied were correct, we are

persuaded the present case would fall into the preexisting exception implying a reasonable price

where the contract had been executed. See id. at 419. Second, Beckett’s narrower reading of

Allied is incorrect. Nothing in Allied requires an express “agreement to agree[,]” to apply the

exception or that the exception applies only to exclusive sale and distribution contracts or

contracts for the sale of goods under the Uniform Commercial Code. See id. at 419–21. The

3
 All Section references are to RSMo (2016).

 6
record shows David Michaud told Beckett that he could not determine a price before beginning

to work on his property because of the severity of the damage. With this understanding, Beckett

not only signed the contract at that time but allowed Michaud Mitigation to execute it. Indeed,

Beckett does not suggest that any price could have been accurately determined for the extensive

remediation of his home before Michaud Mitigation began working on his property. Because

establishing a price in advance was impossible in the context of the complex flood mitigation

project, we hold the exception discussed in Allied applies, and that the contract between

Michaud Mitigation and Beckett was enforceable. See id. at 421.

 Because the contract between Michaud Mitigation and Beckett was enforceable despite

the absence of a price term, the trial court did not err in finding and enforcing a contract between

them. See id.; Murphy, 536 S.W.2d at 32; May, 531 S.W.3d at 582–83. Point One is denied.

II. Point Two—The Xactimate Invoice Was Supported by a Proper Foundation

 In his second point on appeal, Beckett argues the trial court abused its discretion in

admitting the Xactimate Invoice because Michaud Mitigation failed to lay a proper foundation

by explaining how Xactimate calculated the amount to be charged.

 A. Standard of Review

 “The trial court has discretion to determine whether a sufficient foundation was laid for

the admission of evidence . . . and this Court will not reverse absent a showing the trial court

abused its discretion.” Weltmer v. Signature Health Servs. Inc., 417 S.W.3d 856, 863 (Mo. App.

E.D. 2014) (internal citation omitted). “A decision to admit or exclude evidence constitutes an

abuse of discretion when it is clearly against the logic of the circumstances then before the court

and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of

careful, deliberate consideration.” Kappel v. Prater, 599 S.W.3d 189, 192 (Mo. banc 2020)

 7
(internal quotation omitted). Even if we find the trial court abused its discretion, we will not

reverse unless the error materially prejudiced the appellant. Id. (internal citation omitted).

 B. Analysis

 We first note that an allegation that evidence was admitted without a foundation can

mean a number of things in context, such as that the evidence lacked authentication,

identification, logical relevance, or legal relevance. Id. at 192 n.2. As a result, a general

allegation of a lack of foundation is not sufficiently specific to draw a court’s attention as to what

aspect of the foundation is allegedly lacking. Riley v. Headland, 311 S.W.3d 891, 895 (Mo.

App. S.D. 2010) (citing Stewart v. Dir. of Revenue, 702 S.W.2d 472, 476 (Mo. banc 1986))

(additional citation omitted). Here, while we observe that Beckett does not explicitly identify the

exact legal basis for his objection—relevance, authentication, etc.—it is clear from the context of

his arguments and his citation to Section 490.680 that he believes the Xactimate Invoice lacked a

proper foundation because there was not sufficient testimony as to “the mode of its preparation.”

See Section 490.680 (requiring a qualified witness testify to a record’s mode of preparation).

 Beckett identifies no authority directly supporting his proposition that evidence lacks a

proper foundation solely because the witness did not create the program that produced the

calculations relied upon and does not understand the underlying coding and algorithms. The

record clearly shows Michaud Mitigation laid a sufficient foundation for submission of the

Xactimate Invoice. David Michaud testified that the Xactimate Invoice was generated by

inputting his own sketches, notes, and equipment usage from the work and that he had used

Xactimate as long as he had been in the industry; the record also contains evidence that

Xactimate’s use is directed by the mitigation industry and that Xactimate is a unified billing

platform used by both the insurance and mitigation industries. See Bray v. Bi-State Dev. Corp.,

949 S.W.2d 93, 99 (Mo. App. E.D. 1997) (rejecting an argument that insufficient foundation was
 8
laid as to a software’s validity where the relevant results were generated based on inputs by the

witness and the software was generally used and relied upon in the relevant industries); see also

Huffy Corp. v. Custom Warehouse, Inc., 169 S.W.3d 89, 94 (Mo. App. E.D. 2005) (finding a

spreadsheet that was generated by software satisfied Section 490.680 where the witness had

personal knowledge of the information that was input to generate the spreadsheet). Thus, the

trial court’s ruling that sufficient foundation existed to admit the Xactimate Invoice was not

unreasonable or arbitrary. See Kappel, 599 S.W.3d at 192.

 Furthermore, Beckett fails to show the requisite prejudice caused by the admission of the

Xactimate Invoice to reverse the trial court’s ruling, even if we were to find an abuse of

discretion. See id. The trial court clearly explained when it admitted the Xactimate Invoice into

evidence that it was not necessarily finding that the suggested charge based upon the invoice was

fair and reasonable. Rather, the trial court’s determination as the trier of fact would depend on

the weight it accorded the evidence once admitted. Notably, Beckett neither testified as to what

he believed a reasonable payment to Michaud Mitigation would be for the work performed nor

put forward any other evidence to establish what a reasonable payment would be. Conversely,

David Michaud testified that he believed the charge of $51,189.75 was fair and reasonable for

the significant mitigation work completed on Beckett’s flooded home. Ultimately, because the

Xactimate Invoice was not the only basis for determining that $51,189.75 was a reasonable

charge for the services provided by Michaud Mitigation, and because Beckett provided no

evidence supporting an alternate amount, Beckett cannot show that Michaud Mitigation would

have recovered a lesser amount but for the admission of the Xactimate Invoice. See id.

 9
 The trial court did not abuse its discretion in admitting the Xactimate Invoice because

there was sufficient evidence as to how it was prepared and Beckett was not prejudiced by its

admission. See id.; Section 490.680; Weltmer, 417 S.W.3d at 863. Point Two is denied.

 Conclusion

 The judgment of the trial court is affirmed.

 _______________________________
 KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

 10